**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DSM DESOTECH INC., )
)
Plaintiff, )
)      Civil Case No. 08-C-1531
v. )
)      Hon. Joan H. Lefkow
3D SYSTEMS CORPORATION and )
3D SYSTEMS, INC., )
)
Defendants. )
)
)

**DEFENDANT 3D SYSTEMS' MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SEPARATE TRIALS
OF PATENT LIABILITY AND PATENT DAMAGES ISSUES
<u>AND TO STAY DISCOVERY ON PATENT DAMAGES</u>**

## I.     INTRODUCTION

3D Systems Corporation and 3D Systems, Inc. (collectively "3D Systems"), by their undersigned attorneys, submit this memorandum in support of their motion pursuant to Fed. R. Civ. P. 42(b) for separate trials on patent liability and patent damages issues, and to stay discovery on patent damages.

Plaintiff DSM Desotech Inc. ("Desotech") has brought this action, alleging antitrust claims and patent infringement claims.  The separate antitrust claims have been addressed in 3D Systems' motion to dismiss.  (Dkt.31.)  By the present motion, 3D Systems requests that the Court separate the trial of the patent liability and patent damages issues, and stay discovery on the patent damages issues.  This procedure would be conducive to expedition and economy and would allow the parties to avoid the substantial costs of discovery and trial of damages issues which may be obviated by decision on liability issues.

## II.     STATEMENT OF FACTS

### A.     The Patent Case Involves Multiple Patents, Patent Claims, And Accused Products

Desotech has asserted infringement of its U.S. Patent Nos. 6,340,297 ("the '297 Patent") and 6,733,267 ("the '267 Patent").  Both patents are directed to a "recoater" used in a stereolithography machine.  The recoater is a discrete part of the machine which permits the recoating of the material used to create a three-dimensional object in the machine.

The '297 Patent has 12 patent claims.  The '267 Patent has 29 patent claims.  The Complaint contends that 3D Systems' Viper™ Pro, SLA® 7000 and SLA® 5000 machines infringe the patents-in-suit.  In its recent answer to Desotech's interrogatories, 3D Systems has identified the following eight products as its SLA® machines involved in this case:

SLA®-250/50              SLA®-7000
SLA®-250/50 HR           Viper™ si2

SLA<sup>®</sup>-3500                    Viper™ Pro
SLA<sup>®</sup>-5000                    Viper™ Pro HA

(Exh. A, 3D Systems' Answer to Interrog. 9.)  The Complaint does not separate out which of the 41 patent claims are infringed, but asserts broadly that each patent has been infringed.  (Dkt.1 ¶¶ 126-127.)

### B.    Desotech's Requests For Voluminous Documents For Damages

In the Complaint and in its initial disclosures, Desotech has requested damages broadly for its claims of patent infringement.  Thus, Desotech has left open the possibility that it may wish to establish the quite separate requisites for recovering lost profits for patent infringement and for permitting the computation of reasonable royalty damages for patent infringement.  Even if Desotech limits itself to reasonable royalty damages, the patent damages issue is likely to be very complex.

Although discovery has just begun, it is clear that Desotech intends to pursue detailed discovery of 3D Systems' financial, sales and marketing records in aid of a complex case for damages for alleged patent infringement.   Among its recent requests for production of documents, Desotech sought documents regarding (a) sales, (b) all revenues generated by sales, (c) all costs including "fixed costs, variable costs, selling, general and administrative costs and any other costs," (d) all profits, (e) all forecasts or projections, (f) all documents concerning market share, (g) documents concerning competitive products, and (h) all supply agreements, relating to 3D Systems' SLA<sup>®</sup> machines or any other stereolithography apparatus.  (*See* Exh. B, Desotech Req. for Prod. of Docs. Nos. 38-46.)   While 3D Systems has objected to these wide-ranging discovery requests, except for relevant discovery regarding the sales of its SLA<sup>®</sup> machines, it is clear that Desotech contends that voluminous documents are needed from 3D Systems to resolve damages issues.

### III.    ARGUMENT

### A.    Bifurcation Of Liability From Damages
### Is Appropriate In Patent Infringement Actions

Federal Rule of Civil Procedure 42(b) provides, in pertinent part, that:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of... any separate issue or of any number of issues, always preserving the right to trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The criteria for a court to invoke Rule 42(b) to order separate trials of issues are "in the disjunctive instead of in the conjunctive," so that any one of the criteria (furthering convenience, avoiding prejudice, expedition, and economy) is sufficient to warrant bifurcation. *Giro Sport Design v. Pro-Tec, Inc.*, 10 U.S.P.Q.2d 1863, 1864 (N.D. Cal. 1989). "A district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987). "Separation of the issues of liability and damages is an obvious use for Rule 42, since logically liability must be established before the amount of damages can be determined." *Kisteneff v. Tiernan*, 514 F.2d 896, 897 (1st Cir. 1975).

This Court recognizes that the "decision to bifurcate pursuant to Rule 42(b) is made on a case-by-case basis and is reserved for the sole discretion of the court." *See William Reber, LLC v. Samsung Elecs. Am.*, 220 F.R.D. 533, 536 (N.D. Ill. 2004), citing *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000).

The comparison by this Court in the *William Reber* decision between the facts in the *Real* case (where bifurcation was denied) with the facts in *William Reber* (where bifurcation was granted), illustrates important factors that warrant bifurcation. As the *William Reber* court noted, the *Real* court "denied bifurcation in a simple patent case involving one patent, one claim, and

one allegedly infringing product." *Id*. at 538. None of the following circumstances, which would justify bifurcation of patent liability and patent damages issues, however, were found present in the *Real* case:

> a) a need for voluminous documents to resolve damages issues; b) complex infringement issues; c) multiple patents, infringing products, claims, counterclaims, or parties; or d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages.

*William Reber*, 200 F.R.D. at 537 (citing *Real*, 195 F.R.D. at 621).

In contrast to the simple one patent, one claim, and one infringing product facts of the *Real* case, in *William Reber*, the court bifurcated damages from liability and stayed discovery of damages because the case involved multiple patents, multiple claims of the patents, multiple product lines, voluminous discovery documents, and complicated damages computations to establish reasonable royalty damages. The court found the following factors important for justifying bifurcation of the patent liability and damages issues and staying damages discovery:

> ♦    The case involved multiple patents, patent claims, and accused products:

> This case involves two patents, thirteen claims, six competing defendant groups, sixteen product lines, and several affirmative defenses. This is not one of the smaller or more simple patent cases that have been filed before this Court. *Cf. Real*, 195 F.R.D. at 618 (denying a motion to bifurcate a case involving one patent, one claim, and one allegedly infringing product).

*Id*. at 538.

> ♦    Damages discovery would involve voluminous documents:

> In cases in which a defendant would have a heavy burden to produce voluminous documents in connection with discovery on damages, bifurcation is appropriate because "the production and synthesis of these materials may ultimately become unnecessary." *Novopharm Ltd*., 181 F.R.D. at 311 (bifurcating discovery and trial on damages because consideration of damages could be complex, involved and time-consuming).

*Id*.

♦    There was little overlap in documents and witnesses between the liability and

damages issues:

Most of the documents and witnesses in this case will have information
relevant either to the liability stage of this litigation or to the damages issue with
little, if any, overlapping evidence.

*Id.*

♦    The reasonable royalty damages calculations would be complicated:

Moreover, the damages calculation will be complicated.  Under 35 U.S.C. § 284,
damages should be awarded to a claimant "adequate to compensate for the
infringement, but in no event less than a reasonable royalty for the use made of
the invention by the infringer."  Damages for a reasonable royalty are "based upon
a hypothetical negotiation between a patentee and the infringer when the
infringement began." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512 (Fed. Cir.
1995). . . . This is a mathematical calculation.  Although the reasonable royalty
theory requires the proof of numerous factors, Defendants must show how the
proof of damages in this particular case will be especially complex in order to
prevail on the issue of bifurcation.  *See Home Elevators, Inc. v. Millar Elevator
Serv. Co.*, 933 F. Supp. 1090, 1091 (N.D. Ga. 1996).

In this case, Plaintiff states that summary information is all that is required to
calculate damages.  Defendants state that the damages calculation will be
expert-intensive and complex.  The Court agrees with Defendants because of the
complexity of the cellular telephones and the multitude of features they offer.
Plaintiff's patents relate to one of a number of features in Defendant's cellular
telephones.  To determine reasonable royalties, the broad and general information
sought by Plaintiff is not all that is required.  Each of the sixteen accused product
lines will have to be analyzed separately and determinations will have to be made
for each product line as to the popularity of the allegedly infringing feature and
the profitability associated with that feature.  Additionally, substantial non-party
discovery will be required to determine, for example, how often the allegedly
infringing features are used and how consumers value those features.

*Id.* at 538-39.

♦    Sensitive financial information would be disclosed:

The financial information that would become available during discovery on the
issue of damages is very sensitive and highly confidential.  The Court is mindful
of the fact that this case involves a small business going up against major
international corporations, which have the resources to absorb expenses and
delays more easily than Plaintiff, but the potentially detrimental economic effect
of  inadvertent  disclosure  of  sensitive  financial  information  outweighs  any

prejudice to Plaintiff. *See Dynacore Hldgs. Corp. v. U.S. Philips Corp.*, No. 01 CIV. 5012LTSGWG, 2002 WL 31233246, at *4 (S.D.N.Y. Oct. 4, 2002) (discussing a situation in which a judge "was ordering bifurcation of liability and damages discovery due to competitive information concerns," such as the disclosure of "sales information").

*Id.* at 539.

Based on these factors — all of which are present in this case — this Court in *William Reber* bifurcated the issue of liability from damages and stayed discovery on damages. *Id.* at 539, 542.

The decision by this Court in *William Reber* is consistent with many other courts which have bifurcated liability and damages in patent litigation, especially in cases tried by a jury. *See Naxon Telesign Corp. v. GTE Info. Sys., Inc.*, 89 F.R.D. 333, 341 n.10 (N.D. Ill. 1980) (finding presumption in favor of bifurcation of liability and damages issues); *Princeton Biochems., Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 257-59 (D.N.J. 1998) (noting the "abundance" of patent cases permitting bifurcation of liability from damages); *Nat'l Research Dev. Corp. v. Varian Assocs., Inc.*, 822 F. Supp. 1121 (D.N.J. 1993); *Libbey-Owens-Ford Co. v. BOC Group, Inc.*, 655 F. Supp. 897, 900 (D.N.J. 1987); *Eaton Corp. v. Auburn Gear Inc.*, 8 U.S.P.Q.2d 1373, 1374 (N.D. Ind. 1988) ("The separation of liability from damages issues in patent cases is firmly grounded in the case law. . . ."); *Acme Resin Corp. v. Ashland Oil, Inc.*, 689 F. Supp. 751, 753 (S.D. Ohio 1987), *aff'd*, 24 U.S.P.Q.2d 1475 (Fed. Cir. 1992) (noting a "presumption in favor of bifurcation" of liability from damages in patent cases).

The advantages of bifurcating the liability and damages issues in patent cases were summarized in the leading case of *Swofford v. B & W, Inc.*:

> In the normal case, separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity

and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue on appeal without having reached the often time-consuming and difficult damages question.

*Swofford v. B & W, Inc.*, 34 F.R.D. 15, 19-20 (S.D. Tex. 1963), *aff'd*, 336 F.2d 406 (5th Cir. 1964). The trial court's decision was affirmed by the Fifth Circuit:

[W]e cannot think of an instance in a patent action where the damage issue is so interwoven with the other issues that it cannot be submitted to the jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial.

*Id.*, 336 F.2d at 415.

> **B.    There Is Little Overlap Between The
> Patent Liability And Damages Issues**

One factor which this Court pointed to as favoring bifurcation of patent liability and damages issues in *William Reber* was the likelihood of little overlap evidence between the liability stage and the damages issue. This has also been an important consideration favoring bifurcation in other cases where courts have noted that the liability issues of patent infringement or patent validity are distinct from the damages issues and involve very different types of evidence. *See Swofford*, 34 F.R.D. at 19-20; *Princeton Biochems.*, 180 F.R.D. at 256-57.

The issues of patent infringement will focus on the disclosures and claims of the '297 and '267 Patents. The evidence will be almost exclusively technical in nature. To decide the infringement issue, the jury will need to consider technical evidence regarding the accused products and how they work. 3D Systems' invalidity defenses will focus also on the disclosures and claims of the '297 and '267 Patents. To decide invalidity issues, the jury will need to consider evidence relating to the subject matter of the patents-in-suit and technical evidence relating to prior art patent, technical publications, products and materials. To the extent that

experts are called, they will likely be engineers, designers, and experts in stereolithographic technology. A reasoned consideration of this technical evidence in the context of two patents, eight accused products, numerous separate patent claims, and various prior art products and references, will present the jury with a difficult enough task. This job would become overwhelming were one to add a complex damages case requiring the consideration of entirely different evidence and witnesses.

The task for deciding patent damages involves quite different issues, evidence, and witnesses. That task will require the jury to assess evidence involving economics, accounting, and marketing principles as applied to the relevant market. "The issue of damages is often more complex than the issues of validity and infringement." *Shepard v. Int'l Bus. Mach. Corp.*, 45 F.R.D. 536, 537 (S.D.N.Y. 1968).

3D Systems contends that Desotech cannot establish a right to lost profits as damages because Desotech does not manufacture and sell the patented product, namely recoaters, let alone stereolithograhic machines. Were Desotech nevertheless to push forward with a case for lost profits, it would be required to submit evidence regarding such economic factors as: (1) the demand in the market for the patented product; (2) its marketing and manufacturing capability to meet this demand; (3) the absence of noninfringing alternatives offered by other vendors; (4) the extent to which it would have captured the sales made of the accused products; (5) the profits which it would have realized on any additional sales; and (6) other accounting factors such as fixed and variable costs and market characteristics. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978).

Even if Desotech's damages are predicated on a "reasonable royalty" theory based on the sales of the patented products by 3D Systems, as the court recognized in *William Reber*,

220 F.R.D. at 538-39, the damages calculation for a reasonable royalty is "complicated." A reasonable royalty calculation can require an examination of many factors, including (1) royalties received for licensing the patent-in-suit; (2) royalties paid by licensees for patents comparable to the patent-in-suit; (3) the nature and scope of the licenses; (4) whether the licensor has a policy to maintain the patent monopoly; (5) the commercial relationship between the licensor and licensee; (6) the effect of selling the patented specialty in promoting sales of other products of the licensee; (7) the duration of the patent and terms of the licenses; (8) the established profitability of the product made under the patent (including commercial success and popularity of the product); (9) the utility and advantages of the patented property over prior art; (10) the nature of the patented invention (character of the commercial embodiment and benefits to users of the invention); (11) the extent to which the infringer has made use of the invention (and evidence of value of that use); (12) the portion of the profit or selling price that may be customary to allow for the use of the invention (or analogous inventions); (13) the portion of realized profit that should be credited to the invention as opposed to nonpatented elements; (14) opinion testimony of qualified experts; and (15) the amount that a licensor and a licensee would have agreed upon if both had been actually trying to reach an agreement. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified*, 446 F.2d 295 (2d Cir. 1971). These issues are quite different from either patent infringement or patent invalidity.

The damages evidence will be presented by fact and expert witnesses different from the technological witnesses on liability. Testimony on damages will delve into the accounting records of the parties, and detailed sales, marketing, and other financial information of the parties. The calculation of Desotech's alleged damages will no doubt be presented by economists

and accountant expert witnesses.  This evidence and witnesses will have little if any overlap with the patent liability trial.

Desotech may argue that the evidence for liability and damages overlap because of the potential inquiry into "commercial success" to rebut the defense of invalidity based on obviousness.  But courts have rejected this argument, finding that "the evidence of commercial success and damage issue are [*sic*] far from identical."  *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1116 (D. Del. 1984).  "Detailed financial information is not necessary to prove commercial success."  *Lemelson v. Apple Computer Inc.*, 28 U.S.P.Q.2d 1412, 1423 (D. Nev. 1993); *see also Paine, Webber*, 587 F. Supp. at 1116 ("The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and big seller.").

Desotech may also argue that its contention that 3D Systems willfully infringed overlaps with liability evidence.  But the issue of willfulness is factually distinct from that of liability, focusing on "issues of reasonableness and prudence . . . often accompanied by questions of intent, belief, and credibility."  *See SRI Int'l, Inc. v. Advanced Tech. Lab., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 628 (Fed. Cir. 1985) (stating that a willfulness determination requires a demonstration of knowledge and intent).  Willfulness is determined using a totality of the circumstances test, examining factors such as whether the adjudged infringer relied on legal advice, and the commercial factors that might have affected the infringer's actions.  *See SRI Int'l*, 127 F.3d at 1465.

The willfulness issue is more clearly related to damages. Like damages issues, the Court needs to inquire into willfulness only if the defendant has already been adjudged an infringer. An intent to infringe a patent is irrelevant to the infringement determination. *See Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*, 655 F.2d 984, 989 (9th Cir. 1981). Furthermore, it has been recognized by this Court that the better course is to bifurcate willfulness from liability so that the jury "need not hear evidence about the desire or intent to infringe to decide whether infringement occurred." *Pittway Corp. v. Maple Chase Co.*, No. 91 C 3582, 1992 WL 392584, at *5 (N.D. Ill. Dec. 16, 1992); *accord, Zenith Elec. Corp. v. Exdec, Inc.*, No. 93 C 5041, 1996 U.S. Dist. LEXIS 9437 (N.D. Ill. July 3, 1996).

## C.    The Multiple Patents, Accused Products, And Claims Justify Bifurcation

Where a case involves "multiple patents, infringing products, claims, counterclaims, or parties," such circumstances warrant bifurcation of patent liability and damages issues. Bifurcation of liability and damages was denied in *Real*, 195 F.R.D. at 623-24, a simple patent case involving one patent, one claim, and one allegedly infringing product. In contrast, where multiple patents, patent claims, and products are involved, there is a greater potential for savings both in obviating damages discovery and trial for products found not infringed or patents found invalid, as well as for lessening jury confusion and complexity by separating complex liability issues from complex damages issues. *See William Reber*, 220 F.R.D. at 538-39 (two patents, 13 claims, and 16 product lines); *AVIA Group Int'l, Inc. v. Nike, Inc.*, No. 91-326-JU, 1991 WL 340569, at *9 (D. Or. Nov. 21, 1991) (bifurcated trials involving five patents and eight allegedly infringing products); *Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112, 1117 (D. Del. 1984) (bifurcated trials in case involving patent claim, trademark claim, trade secret claim, and complex financial instruments).

Based on the pleadings of the parties so far, it is clear that the present case does not fall within the simple one patent, one infringing product category of the *Real* case where bifurcation was denied. Desotech alleges infringement of two separate patents. These patents have a total of 41 patent claims. Desotech has not limited its charges of infringement to any particular group of the 41 claims, but has simply charged infringement of the patents themselves. Desotech's Complaint identifies three separate products of 3D Systems which are accused of infringement of both patents. 3D Systems itself has identified eight products which may be accused of infringement in this case.

One recognized value to bifurcating patent liability and damages issues is to allow the jury to better focus on the complicated and potentially confusing questions regarding patent infringement and invalidity without also introducing complex damages issues. *See Mag. Instr., Inc. v. J. Baxter Brinkmann Int'l Corp.*, 123 F.R.D. 543, 545 (N.D. Tex. 1988).

The complexity of the present case is even further increased by Desotech's claims that 3D Systems violated (1) § 1 of the Sherman Act (tying); (2) § 3 of the Clayton Act (tying); (3) § 1 of the Sherman Act (unreasonable restraint of trade); (4) § 2 of the Sherman Act (attempted monopolization); (5) Illinois Antitrust Act, and (6) Illinois Uniform Deceptive Trade Practices Act; and (7) tortiously interfered with prospective economic advantage. (Dkt.1, Counts I-VII.) At the very least, patent damages should be separated and discovery stayed in this very complex case.

## D.    Bifurcation And Staying Damages Discovery Saves Time And Resources

The most dramatic benefit of bifurcating patent liability and damages and staying damages discovery is that it will result in substantial savings of judicial and litigation time and resources. *See In re Recombinant DNA Tech. Patent and Contract Litig.*, 30 U.S.P.Q.2d 1881, 1901 (S.D. Ind. 1994); *Princeton Biochems.*, 180 F.R.D. at 259. If the jury in a liability trial

determines that either the '297 Patent or '267 Patent is not infringed or is invalid, then the need for trial on damages for such patent would be eliminated altogether. *See Swofford*, 34 F.R.D. at 20. Even if the jury renders a verdict of infringement, the parties may then decide to settle. The potential savings from bifurcating damages and willfulness from liability in this case would be substantial.

As one court has stated:

> A jury verdict in favor of [the defendant] at the close of the first trial would exterminate the need for the damages phase, and a verdict in favor of [the plaintiff] could well lead to a settlement. If either scenario were to prevail and the second trial become unnecessary, the savings to both parties and the court would be substantial — discovery and litigation costs would be dramatically reduced, and the issues tried by the Court streamlined.

*Industrias Metalicas*, 172 F.R.D. at 8-9; *see also Hunter Douglas, Inc. v. Comfortex Corp.*, 44 F. Supp. 2d 145, 155 (N.D.N.Y. 1999) ("Simply stated, without patent liability, there will be no need to inquire as to [the patentee's] damages . . . ."); *Princeton Biochems.*, 180 F.R.D. at 259 ("[B]oth the parties, as well as the Court, would inevitably be required to invest valuable time and effort to litigate potentially unnecessary issues if damages discovery and trial were to go forward now."); *Giro Sport*, 10 U.S.P.Q.2d at 1865 (bifurcating damages because "the time and money spent on assessing damages may not be necessary if no liability is found . . . .").

The significance of the savings to the parties is recognized to be greatest when there is the prospect of voluminous documents which are sought for patent damages. The *William Reber* court explained the importance of this factor in justifying bifurcation by reference to two decisions where the defendant was likely to have a heavy burden of producing documents on the damages issues:

> In *Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977, 983 (D. Del. 1982), the court ordered separate trials on the issues of liability and damages when the defendant represented to the court "that to resolve the damage issue will require a review of millions of documents and require extensive time both during discovery

- 13 -

and at trial."  Similarly, in *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 311 (E.D.N.C. 1998), the court ordered separate trials on a patent case surrounding the alleged infringement of a ranitidine hydrochloride product because "litigating the complex damages issues would place a heavy burden on the [alleged infringer] to produce voluminous documents."  The fact that this immensely time-consuming effort might be avoided if the jury found for the defendant in the liability portion of the trial was a factor in favor of bifurcation. *Id*.

*Id* at 537.

In the present case, 3D Systems has resisted Desotech's attempts to obtain voluminous documents in support of its claim for patent damages.  Indeed, 3D Systems submits that nothing more than its quantity and dollars of sales are relevant to the reasonable royalty damages analysis.  But Desotech may press the issue and either require motion practice on involved issues relating to production of documents or force 3D Systems to provide a voluminous production of documents.  Either possibility would justify bifurcation to allow the parties to avoid such litigation expenses until patent liability has been established.

Moreover, whatever the financial records which 3D Systems provides on damages issues, they will disclose sensitive and highly confidential information.  As this Court noted in *William Reber*, one factor weighing in favor of bifurcation is that patent damages discovery involves financial information which "is very sensitive and highly confidential" and creates a "potentially detrimental economic effect of inadvertent disclosure of sensitive financial information."  *Id*. at 539.  *Accord*, *Industrias Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 9 (D.P.R. 1997); *Intellectual Prop. Dev. Corp. v. UA Columbia Cablevision of Westchester, Inc.*, 34 U.S.P.Q.2d 1605, 1606-07;  *Paine, Webber*, 587 F. Supp. at 1116-17.

## IV.    **LOCAL RULE 37.2 CONFERENCE OF COUNSEL**

In compliance with Local Rule 37.2, 3D Systems' counsel has conferred in good faith with Desotech's counsel in an unsuccessful effort to reach agreement on bifurcation and on a

- 14 -

stay of discovery pending a ruling on 3D Systems' motion to dismiss. The meeting was conducted at Mayer Brown's Chicago office, at 2 p.m. on June 26, 2008, and was attended by all attorneys of record (Sidney David and Jonathan A. David participating by telephone). At the meeting, the parties failed to reach agreement on the issues of bifurcation or staying discovery. On August 19, 2008, counsel for 3D Systems Paula Render conferred by telephone with Desotech's counsel Britt Miller and confirmed that the parties are still in disagreement regarding the matters presented in this motion.

## V.    **CONCLUSION**

For the foregoing reasons, 3D Systems respectfully requests that the Court enter an order separating the trial of the patent liability and patent damages issues, and staying all discovery on patent damages until after trial of the patent liability issues.


Dated: August 19, 2008                         Respectfully submitted,

                                               /s/ Paula W. Render
                                               *One of the Attorneys for Defendants 3D*
                                               *Systems Corporation and 3D Systems, Inc.*


Sidney David (sdavid@ldlkm.com)         Michael Sennett (msennett@jonesday.com)
Jonathan A. David (jdavid@ldlkm.com)    Paula W. Render (prender@jonesday.com)
LERNER DAVID LITTENBERG                 Niloy Ray (nray@jonesday.com)
KRUMHOLZ & MENTLIK, LLP                 JONES DAY
600 South Avenue West                   77 West Wacker Drive, Suite 3500
Westfield, NJ 07090-1497                Chicago, IL 60601
Tel: (908) 654-5000                     Tel: (312) 782-3939
Fax: (908) 654-7866                     Fax: (312) 782-8585

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on August 19, 2008, a copy of the foregoing DEFENDANT 3D SYSTEMS' MEMORANDUM IN SUPPORT OF ITS MOTION FOR SEPARATE TRIALS OF PATENT LIABILITY AND PATENT DAMAGES ISSUES AND TO STAY DISCOVERY ON PATENT DAMAGES was served via ECF pursuant to Local Rule 5.5 to the following attorneys of record:

Andrew S. Marovitz
Britt M. Miller
Thomas V. Panoff
courtnotification@mayerbrown.com
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606

Bruce M. Gagala
Jeffrey B. Burgan
bgagala@leydig.com
jburgan@leydig.com
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601

/s/ Paula W. Render

CHI-1664578v2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DSM DESOTECH INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-C-1531 |
| | ) | |
| v. | ) | Hon. Joan H. Lefkow |
| | ) | |
| 3D SYSTEMS CORPORATION and | ) | |
| 3D SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### 3D SYSTEMS' ANSWERS AND OBJECTIONS TO
### PLAINTIFF DESOTECH'S FIRST SET OF INTERROGATORIES

3D Systems Corporation and 3D Systems, Inc. (collectively, "3D Systems") hereby

provides the following answers and objections to Desotech's First Set of Interrogatories. All

answers and objections are provided subject to and specifically incorporate 3D Systems' General

Objections and Objections to Definitions and Instructions, which are set forth in Attachment A.

All confidential information to be produced by 3D Systems will be produced after the entry of

and pursuant to an appropriate Protective Order entered by the Court.

### ANSWERS AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify the current and former officers, directors, employees,
agents and contractors of 3D Systems Corporation and/or 3D Systems, Inc. who had any decision-
making authority or supervisory responsibility with respect to each of the following:

A) Whether to sell or distribute, and/or the terms and conditions of sale or
distribution, for all large-frame SL machines and SL resins sold or distributed by
3DS in the United States;

B) The development and implementation of the RFID feature, including whether and
when to implement the RFID feature on large-frame SL machines sold by 3DS in
the United States;

C) The refurbishment or repair of any large-frame SL machines sold by 3DS in the
United States, including 3DS's relationship, if any, with providers of maintenance

Amended Complaint. 3D Systems further objects to Interrogatory No. 8 because the information requested has no relevance to any issue in this case and is not reasonably calculated to lead to the discovery of admissible evidence. 3D Systems further objects to Interrogatory No. 2 as vague, ambiguous and confusing in referring to "sales attributable to resins."

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information in answer to Interrogatory No. 8 if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed: total sales of stereolithography resins in units sold to customers identified in the Amended Complaint, for use in systems alleged to be tying products in the Amended Complaint.

**INTERROGATORY NO. 9:** Identify on a monthly basis all stereolithography apparatus products or SLA® machines imported, manufactured, used, sold or offered for sale by 3DS since January 1, 2000, the location(s) of each such activity with respect to each product, the number of units sold of each identified product on a monthly basis, the amount of revenue from sales of each identified product on a monthly basis, and the gross and net profit from the sale of each identified product on a monthly basis beginning January 1, 2000 and identify the three (3) persons employed by 3DS who are most knowledgeable about the sales, revenues, profits and losses generated by sales of each such identified product.

**RESPONSE:** 3D Systems objects to Interrogatory No. 9 as seeking information that is wholly irrelevant to this lawsuit, not reasonably calculated to lead to the discovery of admissible evidence, unduly burdensome and unnecessarily intrusive of 3D Systems' competitively sensitive confidential business information because the information sought relates to 3D Systems' sales results, profits and costs, which are not relevant to any issue in this case. 3D Systems further objects to Interrogatory No. 9 as premature.

Subject to and without waiving it general and specific objections, 3D Systems states that the following stereolithography apparatus products or SLA® machines have been either made, sold or offered for sale in the U.S. by 3D Systems since January 1, 2000:

11

| | |
|---|---|
| SLA®-250/50 | SLA®-7000 |
| SLA®-250/50 HR | Viper™ si2 |
| SLA®-3500 | Viper™ Pro |
| SLA®-5000 | Viper™ Pro HA |

3D Systems further states that it will provide the following additional information if and when the

Court determines that Desotech's Amended Complaint meets the threshold of plausibility

required by the courts before the inevitably costly and protracted discovery of antitrust cases may

proceed:  Documents identified in 3D Systems' responses to Document Requests Nos. 38-46.

**INTERROGATORY NO. 10**: To the extent that 3DS asserts that any claims of the patents in suit are not (or were not) infringed by the making, having made, using, importing, selling or offering for sale any of the products identified in response to Interrogatory No. 9, specify in detail the factual basis supporting that assertion.

**RESPONSE:**  Subject to 3D Systems' general objections, 3D Systems responds that the factual

basis is that the structure and operation of the recoater used in accused 3D Systems products

combined with the proper claim construction of any of the asserted claims of the patents-in-suit,

lead to the conclusion that 3D Systems' products do not infringe such claims.  Subject to 3D

Systems' general objections, pursuant to Fed. R. Civ. P. 33(d), 3D Systems will produce business

records from which the structure and operation of 3D Systems' recoater may be determined.

Moreover, any claim construction of any of the asserted claims of the patents-in-suit that would

encompass 3D Systems' products, either literally or under the doctrine of equivalents, would

render such claims invalid under at least 35 U.S.C. § 112 ¶ 1 and/or ¶2 for lack of enablement and

lack of written description, and thus not infringed.

**INTERROGATORY NO. 11**: Separately with respect to each product identified in response to Interrogatory No. 9, describe in detail the nature of any changes or modifications that have ever been made to such product, including the date(s) on which such change(s) or modification(s) occurred since January 1,2000.

**RESPONSE:**  3D Systems objects to this interrogatory as overbroad, unduly burdensome, not

relevant and not reasonably calculated to lead to the discovery of admissible evidence to the

12

DATED: August 7, 2008

**AS TO OBJECTIONS**

/s/ Paula W. Render

*One of the Attorneys for 3D Systems Corp.*
*and 3D Systems, Inc.*

**AS TO ANSWERS**

/s/ Robert M. Grace, Jr., Esq.

*General Counsel, 3D Systems Corp. and*
*3D Systems, Inc.*

Sidney David (sdavid@ldlkm.com)
Jonathan A. David (jdavid@ldlkm.com)
LERNER DAVID LITTENBERG KRUMHOLZ &
MENTLIK, LLP
600 South Avenue West
Westfield, NJ 07090-1497
Tel: (908) 654-5000
Fax: (908) 654-7866

Michael Sennett (msennett@jonesday.com)
Paula W. Render (prender@jonesday.com)
Niloy Ray (nray@jonesday.com)
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, IL 60601
Tel: (312) 782-3939
Fax: (312) 782-8585

15

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DSM DESOTECH INC.,                        )
                                          )
        Plaintiff,                       )
                                          )        Civil Case No. 08 C 1531
        v.                               )
                                          )        Judge Lefkow
3D SYSTEMS CORPORATION and 3D             )
SYSTEMS, INC.,                            )        Magistrate Judge Keys
                                          )
        Defendants.                      )

## PLAINTIFF DSM DESOTECH INC.'S
## FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS TO
## DEFENDANTS 3D SYSTEMS CORPORATION AND 3D SYSTEMS, INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff DSM

Desotech Inc. ("Desotech") hereby requests that defendants 3D Systems Corporation and 3D

Systems, Inc. (collectively "3DS" unless otherwise indicated) produce all documents described

below for inspection and copying at the offices of Mayer Brown LLP, 71 South Wacker Drive,

Chicago, Illinois  60606, on or before 30 days after service hereof.  Each defendant—3D

Systems Corporation and 3D Systems, Inc.—is to produce its own documents in response to each

Request.  These Requests are to be responded to in accordance with the following Definitions

and Instructions.

## DEFINITIONS

Notwithstanding any Definition stated below, each word, term, or phrase whenever used

in any Definition, Instruction, or Request is intended to have the broadest meaning permitted

under the Federal Rules of Civil Procedure.

    (d)     Any of the patents in suit are invalid or unenforceable due to prosecution history estoppel;

    (e)     It did not infringe the patents in suit; and,

    (f)     Desotech is estopped or barred from claiming infringement or damages of the patents in suit for any reason.

**REQUEST NO. 33:** All documents concerning large-frame SL machines, SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 34:** All documents concerning any license or assignment related to the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 35:** All documents concerning any testing or analysis showing whether any of the SLA machines or any other stereolithography apparatus identified in response to Interrogatory No. 9 infringes or infringed the patents in suit.

**REQUEST NO. 36:** All photographs, videotapes, digital video disks (DVD) or any other visual depiction of any of the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 37:** At least one set of manufacturing drawings for each version of any of the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 38:** Documents sufficient to show the volume (by unit) of all SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9 manufactured by 3DS since January 1, 2000 on a monthly basis.

**REQUEST NO. 39:** Documents sufficient to show the volume of sales, on a monthly, product-by-product basis, of the SLA machines or any other stereolithography apparatus identified in response to Interrogatory No. 9 since January 1, 2000.

**REQUEST NO. 40:** Documents sufficient to show all revenues, on a monthly, product-by-product basis, generated by sales of the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 41:** Documents sufficient to show all costs including but not limited to costs of goods sold, fixed costs, variable costs, selling, general and administrative costs and any other costs, on a monthly, product-by-product basis, generated by sales of the SLA machines or any other stereolithography apparatus identified in response to Interrogatory No. 9 since January 1, 2000.

**REQUEST NO. 42:** Documents sufficient to show all profits, on a monthly, product-by-product basis, generated by sales of the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 43:** All documents relating to forecasts or projections with respect to the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 44:** All documents concerning market share, whether past, current, or projected, of the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 45:** All documents concerning products in competition with the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 46:** All documents concerning supply agreements relating to the SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 47:** All documents concerning any inspection or analysis of any of the large SLA machines or any other stereolithography apparatus identified in response to Interrogatory No. 9.

**REQUEST NO. 48:** Documents sufficient to show the names and current or last known business addresses of each of your officers, managers, agents or other employees who has or had any responsibility, in any capacity (whether functional, supervisory or managerial), for your use, purchase, manufacture, sale, distribution, or supply of SLA machines or any other stereolithography apparatus identified by 3DS in response to Interrogatory No. 9.

**REQUEST NO. 49:** All documents concerning any stereolithography apparatus manufactured or sold by DuPont or any other third party.

**REQUEST NO. 50:** All documents concerning a "Zephyr recoating system" of the use of a "Zephyr recoating system" as that term is used on the brochure for the 3D Systems SLA 5000 apparatus attached hereto as Exhibit A.

**REQUEST NO. 51:** All documents not otherwise responsive to any request that relate to any of the facts alleged in the Complaint.

**REQUEST NO. 52:** All documents concerning or allegedly supporting the defenses and counterclaims in 3DS' Answer, Affirmative Defenses, and Counterclaims and/or any amendment(s) to such pleadings.

**REQUEST NO. 53:** All documents on which 3DS intends to rely at the trial of this action.

**REQUEST NO. 54:** All documents relied upon by 3DS in responding to Desotech's interrogatories.

Dated: July 3, 2008

Respectfully submitted,

*Plaintiff DSM Desotech Inc.*

By: _____

One of its attorneys

Bruce M. Gagala
Jeffrey B. Burgan
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 North Stetson Avenue
Chicago, Illinois 60601
(312) 616-5600
(312) 616-5700 – fax

Andrew S. Marovitz
Britt M. Miller
Thomas V. Panoff
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax