# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DSM DESOTECH INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 08 C 1531 |
| v. | ) | |
| | ) | Judge Lefkow |
| 3D SYSTEMS CORPORATION and 3D | ) | |
| SYSTEMS, INC., | ) | Magistrate Judge Keys |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF DSM DESOTECH INC.'S
## MEMORANDUM OF LAW IN OPPOSITION TO 3D SYSTEMS'S
## MOTION TO STAY DISCOVERY INTO ANTITRUST & STATE LAW CLAIMS

Bruce M. Gagala
Jeffrey B. Burgan
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
80 North Stetson Avenue
Chicago, Illinois 60601
(312) 616-5600
(312) 616-5700 – fax

Andrew S. Marovitz
Britt M. Miller
Thomas V. Panoff
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
(312) 701-7711 – fax

*Attorneys for DSM Desotech Inc.*

Dated: September 9, 2008

## TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................... 1

II.     *Twombly* Does Not Create an Automatic Stay of Discovery ........................... 2

III.    3DS Fails to Demonstrate "Good Cause" under Rule 26(c) ........................... 6

IV.     The Protective Order Being Negotiated by the Parties Adequately Safeguards
        Proprietary Information ................................................................................ 10

V.      Conclusion .................................................................................................... 11

## TABLE OF AUTHORITIES

<u>Cases</u>

*Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*
289 F. Supp. 2d 986 (N.D. Ill. 2003) ........................................................................... 4

*Bell Atlantic Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*,
1995 WL 13115 (S.D.N.Y. Jan. 13, 1995) ............................................................. 10

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ..................................................................................... 1, 3

*Builders Assoc. of Greater Chicago v. City of Chicago*,
170 F.R.D. 435 (N.D. Ill. 1996) ............................................................................. 9

*Coca-Cola Bottling Co. of Lehigh Valley v. Grol*,
1993 WL 13139559 (E.D. Pa. Mar. 8, 1993) ......................................................... 7

*Cohn v. Taco Bell Corp.*,
147 F.R.D. 154 (N.D. Ill. 1993) ..................................................................... 2, 8, 9

*Douglas v. Potter*,
268 F. App'x 468 (7th Cir. 2008) ........................................................................... 4

*Everco Indus., Inc. v. O.E.M. Prods. Co.*,
362 F. Supp. 204 (N.D. Ill. 1973) ....................................................................... 10

*Flash Memory Antitrust Litig., In re*,
2008 WL 62278 (N.D. Cal. Jan. 4, 2008) ............................................................. 3

*Gerald Chamales Corp. v. Oki Data Am., Inc.*,
247 F.R.D. 453 (D.N.J. 2007) ............................................................................... 7

*Graphics Processing Units Antitrust Litig., In re*,
2007 WL 2127577 (N.D. Cal. July 24, 2007) ....................................................... 3

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990) ....................................................................... 7, 10

*Hosp. Bldg. Co. v. Trustees of Rex Hosp.*,
425 U.S. 738 (1976) ........................................................................................... 11

*Ippolito v. WNS, Inc.*,
864 F.2d 440 (7th Cir. 1988) ............................................................................. 10

*Limestone Development Corp. v. Village of Lemont*,
520 F.3d 797 (7th Cir. 2008) ............................................................................... 4

## TABLE OF AUTHORITIES
(continued)

**Page**

*Lithgow v. Edelmann*,
  247 F.R.D. 61 (D. Conn. 2007) ............................................................... 11

*Niederhoffer Intermarket Fund, L.P. v. Chicago Mercantile Exchange*,
  1999 WL 731773 (N.D. Ill. Aug. 31, 1999) .................................... 6, 7, 9

*OMG Fidelity, Inc. v. Sirius Tech., Inc.*,
  239 F.R.D. 300 (N.D.N.Y. 2006) ........................................................... 11

*Siemer v. Quizno's Franchise Co. LLC*,
  2008 WL 904874 (N.D. Ill. Mar. 31, 2008)............................................. 4

*Static Random Access (SRAM) Antitrust Litig., In re*,
  2008 WL 426522 (N.D. Cal. Feb. 14, 2008) ........................................... 4

*Stokes v. City of Chicago*,
  1986 WL 12311 (N.D. Ill. Oct. 24, 1986) ............................................... 7

*Sulfuric Acid Antitrust Litig., In re*,
  231 F.R.D. 331 (N.D. Ill. 2005)........................................................... 7, 8

*Syngenta Seeds, Inc. v. BTA Branded, Inc.*,
  2007 WL 3256848 (N.D. Ill. Nov. 1, 2007) ............................... 2, 6, 7, 8

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ................................................................. 4

*Turner Broad Sys., Inc. v. Tracinda Corp.*,
  175 F.R.D. 554 (D. Nev. 1997) ............................................................... 7

*United States v. Neuendank*,
  278 F. Supp. 2d 899 (N.D. Ill. 2003) ................................................... 11

## Statutes

15 U.S.C. § 78u-4(b)(3)(B)....................................................................... 1

## Rules

Fed. R. Civ. P. 1 ....................................................................................... 2

Fed. R.Civ. P. 26(c) ............................................................................... 11

## I.    Introduction

Apart from securities cases,[1] the general rule in litigation is that discovery proceeds notwithstanding the filing of a motion to dismiss.  Indeed, 3D Systems Corporation and 3D Systems, Inc. (collectively "3DS") admit (Br. at 3) that this Court already has decided that "the pendency of a motion, such as a motion to dismiss, does not operate as a stay or extension of discovery."[2]  Nevertheless, without citing any actual Seventh Circuit standard or binding authority, 3DS asks this Court to ignore its own standing procedure and the more general rule, on the basis of so-called "principles of *Twombly*." *Id*. at 1.  But, just as it did in its motion to dismiss, 3DS again fundamentally misapprehends *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  Because *Twombly* does not mandate—or even discuss—a stay of discovery, and because 3DS offers no other basis for a stay, 3DS's motion to stay discovery involving DSM Desotech Inc.'s ("Desotech") antitrust and state law claims should be denied.

3DS also has used the occasion of its motion to frustrate the discovery process.  It has acted as the Court itself by granting itself a stay through its categorical refusal to produce documents until the Court rules on its pending motion to dismiss.  The common refrain used throughout 3DS's discovery responses is "3DS will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of

---

[1] Congress passed special legislation to implement stays of discovery for securities litigation.  *See* Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . .").  Congress enacted no such measure with respect to the nation's antitrust laws.  The Sherman and Clayton Acts do not contain an automatic stay, and the Federal Rules of Civil Procedure have never been amended to create such an automatic stay for antitrust or similar claims.

[2] "Discovery," Website of Judge Joan Humphrey Lefkow, United States District Court for the Northern of Illinois, at http://www.ilnd.uscourts.gov/home/JudgeInfo.aspx.

plausibility required by the courts . . . ."[3]  When combined with its numerous, repetitive objections to Desotech's interrogatories and document requests, 3DS's self-granted stay has deprived Desotech of even the most basic discovery on its antitrust and state law claims. Although 3DS has had Desotech's interrogatories and document requests for over two months, 3DS has refused to produce a single document and has provided answers (partial ones at that) to only a few of Desotech's fourteen interrogatories.  Rather than comply with discovery, 3DS has attempted at every turn to thwart the truth-seeking purpose the discovery rules are designed to achieve.  *See Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) (defendant's motion for a stay was solely "a vehicle to stall or delay the inevitable search for the truth, as provided by the federal discovery rules"); Fed. R. Civ. P. 1 (Federal Rules are to be "administered to secure the just, speedy, and inexpensive determination of every action.").  3DS's motion for a stay should be denied, and 3DS should be ordered to provide the information and documents Desotech has requested.

**II.     *Twombly* Does Not Create an Automatic Stay of Discovery**

As noted above (at 1), this Court's standard operating procedures follow the general rule that "the mere filing of [a Rule 12(b)(6)] motion does not automatically stay discovery, nor does it mean that a court will automatically grant a stay simply because the defendant asks for one." *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, 2007 WL 3256848, at *1 (N.D. Ill. Nov. 1, 2007). 3DS acknowledges this general rule, but argues that *Twombly* creates an exception in which

---

[3] Exhibit A contains sample responses from *3D Systems' Answers and Objections to Plaintiff Desotech's First Set of Interrogatories* (Nos. 5 and 6) and *3D Systems' Responses and Objections to Plaintiff Desotech's First Request for Production of Documents* (Nos. 5-7) in which 3DS refuses to provide the requested information until the Court rules on its motion to dismiss.

antitrust discovery is automatically stayed pending a Rule 12(b)(6) motion.[4]  Tellingly, 3DS does not cite to any holding in *Twombly* supporting its assertion.  Br. at 3-5.  There is good reason for this.  There is no such holding.  Instead, 3DS relies entirely on so-called "principles of *Twombly*."  *Id.* at 1.  But there are no "principles of *Twombly*" that support a party's effort to grant itself a *sua sponte* stay.  As in its motion to dismiss, 3DS fundamentally misapprehends *Twombly*.

*Twombly* is a case about *pleading* standards.  Nowhere in *Twombly* does the Supreme Court address the timing of discovery or ever claim to be establishing a new standard for permitting discovery, let alone create an automatic stay.  As one court held earlier this year:

> *Twombly* does not erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss.  While the *Twombly* Court was certainly concerned with the expense of discovery in antitrust cases, its resolution of this concern was to require plaintiffs *to plead* non-conclusory, factual allegations giving rise to a plausible claim or claims for relief.  The Court did not hold, implicitly or otherwise, that discovery in antitrust actions is stayed or abated until after a complaint survives a Rule 12(b)(6) challenge.  Such a reading of that opinion is overbroad and unpersuasive.

*In re Flash Memory Antitrust Litig.*, 2008 WL 62278, at *3 (N.D. Cal. Jan. 4, 2008) (emphasis added, internal citations and quotations omitted);[5] *see In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007) (*Twombly* "used concerns about the breadth and expense of antitrust discovery to identify pleading standards for complaints, it did not use pleading standards to find a reason to foreclose all discovery"); *In re Static Random*

---

[4] 3DS's memorandum never explains why Desotech's state law disparagement and tortious interference claims must also be stayed under *Twombly*.

[5] Although the court in *Flash Memory* deferred discovery, it did so because plaintiffs sought discovery *before* filing their amended complaints and *before* any motions to dismiss were filed.  In contrast, the Amended Complaint here was on file for three months before 3DS sought a stay.

*Access (SRAM) Antitrust Litig.*, 2008 WL 426522, at *2 (N.D. Cal. Feb. 14, 2008) (refusing to stay discovery under *Twombly* and permitting discovery *before* motions to dismiss were filed).

Nor does 3DS ever explain how *Twombly* would be applied broadly to discovery, given the fact that *Twombly* has been applied to pleading standards more general than those simply related to antitrust cases.  *See, e.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1080-84 (7th Cir. 2008) (employment discrimination).  Would discovery in all cases be stayed pending disposition of the motion to dismiss?  Would discovery of "expensive" cases be stayed?  How can 3DS argue that *Twombly* evidences a sea-change in discovery law when this Court's standing rules continue to make clear, even after *Twombly* was decided, that the pendency of a motion to dismiss does *not* operate as a stay?  3DS's brief is silent on these key questions and as to the standard for the stay that it claims are mandated by the "principles" of *Twombly*.[6]

3DS's reliance on *Limestone Development Corp. v. Village of Lemont*, 520 F.3d 797 (7th Cir. 2008), for the proposition that *Twombly* counsels in favor of stays of discovery in antitrust cases, is also misplaced.  As in *Twombly*, nowhere in *Limestone* is a stay of discovery addressed.[7]  The *Limestone* Court simply applied *Twombly's* pleading standard and held that a "threadbare" complaint warranted dismissal.  *Id.* at 803.  But Desotech's 29-page Amended Complaint is anything but "threadbare."  It contains detailed factual allegations regarding 3DS's

---

[6] 3DS cites *Douglas v. Potter*, 268 F. App'x 468, 470 (7th Cir. 2008) (unpub'd) for the proposition that "[s]tays of discovery while a motion to dismiss is pending are quite common."  Br at 4 n.2.  3DS overreads *Douglas*.  The *Douglas* Court never even discussed a stay, except for mentioning in its recitation of the procedural history that one occurred.

[7] 3DS's citation (Br. at 5) of *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J. sitting by designation) and *Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *9 (N.D. Ill. Mar. 31, 2008) are equally puzzling, as both cases address appropriate *pleading* requirements and are entirely silent on the issue of staying discovery.

anticompetitive, disparaging, tortious and infringing conduct by listing specific customers and behavior, and provides far more factual detail than required by *Twombly*.

In particular, Desotech explains in great detail in its Amended Complaint how 3DS has expressly refused to sell and service one of its most recent large-frame stereolithography ("SL") machines—the Viper™ Pro SLA® System—unless customers exclusively purchase resins used in those machines from 3DS. Desotech identifies five examples of customers who have been subject to such unlawful tying: Express Pattern Inc. (Am. Compl. ¶¶ 56-59); Dynacept Company, Inc. (*Id*. ¶¶ 60-63); Lockheed Martin (*Id*. ¶ 66); Tangible Express (*Id*. ¶ 68) and AP Proto (*Id*. ¶ 70). Desotech also alleges that 3DS has unlawfully refused to service older model large-frame SL machines to force customers to purchase a Viper Pro machine, which uses radio frequency identification ("RFID") technology to exclude resins from suppliers other than 3DS. *Id*. ¶¶ 42, 64, 71, 94. Moreover, 3DS has used its near 100% market share in large-frame SL machines in the United States in an attempt to monopolize the separate market for resins used in those machines. *Id*. ¶¶ 98-106.

In addition to this anticompetitive behavior, Desotech also alleges in its Amended Complaint that 3DS has intentionally disparaged Desotech's resins and deliberately misled customers by claiming that Desotech's resins are not "licensed" or "qualified" for use with the Viper Pro despite the fact that no such licensing or qualification process ever existed. *Id*. ¶¶ 53-55, 112-13. 3DS has also told customers that Desotech has not done its "due diligence" with respect to the resins that Desotech has developed and marketed without any basis for such an assertion. *Id*. ¶ 54. As Desotech alleges in its Amended Complaint, such intentional disparagement violates the Illinois Uniform Deceptive Trade Practices Act. *Id*. ¶¶ 112-13. Moreover, 3DS has tortiously interfered with Desotech's prospective economic advantages by

using unlawful means to prevent planned resin purchase contracts between Desotech and its customers, such as Express Pattern, from being executed. *Id.* ¶¶ 56-59, 118-19. The net effect of 3DS's anticompetitive and other unlawful behavior has been to reduce customer choice and to foreclose competition in the resin market for large-frame SL machines, which has reduced overall consumer welfare.

This is not a case in which the plaintiff files a skeletal complaint and then immediately seeks broad discovery while the ink is still drying on its complaint. Desotech filed its original Complaint in March of this year (it filed an Amended Complaint in May to add a wholly-owned subsidiary of 3D Systems Corporation) and 3DS's motion to dismiss has been fully briefed for over a month. Given that this case is almost six months old, Desotech is entitled to the discovery it requested from 3DS in early July. In *Niederhoffer Intermarket Fund, L.P. v. Chicago Mercantile Exchange*, 1999 WL 731773, at *1 (N.D. Ill. Aug. 31, 1999), the court refused to stay discovery *before* the motion to dismiss was fully briefed because it saw "no reason to shut down discovery . . . only to start it back up again should the defendant's motion fail." The need to proceed with discovery is even more persuasive in our case than in *Niederhoffer* given that the motion to dismiss is fully briefed and the parties are simply waiting on a ruling.

## III.    3DS Fails to Demonstrate "Good Cause" under Rule 26(c)

Despite bringing its motion for a stay pursuant to Rule 26(c), 3DS nowhere mentions the "good cause" standard that must be satisfied to obtain any form of relief under Rule 26(c). 3DS's failure even to attempt to articulate good cause is not surprising given that 3DS bases its entire motion for a stay on the fact that it has filed a motion to dismiss. The case law is clear, however, that a defendant "must assert something more than the mere existence of a motion to dismiss to support a claim of good cause to request a complete stay of discovery." *Syngenta Seeds*, 2007 WL 3256848, at *2; *see also Gerald Chamales Corp. v. Oki Data Am., Inc.*, 247

6

F.R.D. 453, 454 (D.N.J. 2007) ("it is well settled that the mere filing of a dispositive motion does

not constitute 'good cause' for the issuance of a discovery stay"); *Turner Broad Sys., Inc. v.*

*Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997) (pending motion to dismiss does not "in

and of itself  . . . warrant a stay of discovery").    As one court has held:

> Had the Federal Rules contemplated that a motion to dismiss under Fed. R.
> Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a
> provision to that effect.  In fact, such a notion is directly at odds with the
> need for expeditious resolution of litigation . . . . [A] stay of the type
> requested by defendants, where a party asserts that dismissal is likely,
> would require the court to make a preliminary finding of the likelihood of
> success on the motion to dismiss.   This would circumvent the procedures
> for resolution of such a motion.  Although it is conceivable that a stay might
> be appropriate where the complaint was utterly frivolous, or filed merely in
> order to conduct a "fishing expedition" or for settlement value, this is not
> such a case.

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (internal citation omitted);

*Coca-Cola Bottling Co. of Lehigh Valley v. Grol*, 1993 WL 13139559, at *2 (E.D. Pa. Mar. 8,

1993) (same).   As demonstrated above, Desotech's Amended Complaint is far from "utterly

frivilous" or a "fishing expedition."  In any event, as this District has emphasized, "the grounds

for staying or limiting discovery listed in Rule 26 do not include the legal insufficiency of a

complaint."  *Niederhoffer,* 1999 WL 731773, at *1.

      This District has noted that good cause for a stay may exist when certain *threshold* issues

are presented, such as jurisdiction, standing or immunity.  *In re Sulfuric Acid Antitrust Litig.*, 231

F.R.D. 331, 337 (N.D. Ill. 2005); *Syngenta Seeds*, 2007 WL 3256848, at *1 (discussing threshold

issues potentially warranting a stay).[8]   None of these threshold questions are raised by 3DS.

Courts sometimes have held that good cause might exist if the motion to dismiss would dispose

---

[8] In *Stokes v. City of Chicago*, 1986 WL 12311, at *1 (N.D. Ill. Oct. 24, 1986) (Lefkow, J.), cited by 3DS (Br. at 4),
this Court granted a discovery stay because the threshold issue of prosecutorial immunity was raised.

of the entire case. *Sulfuric Acid*, 231 F.R.D. at 337.  However, when a defendant does not move to dismiss all counts of a complaint, this District has held that "staying discovery is particularly inappropriate . . . because even if defendant were successful, defendant's motion would not be dispositive of the entire case." *Cohn*, 147 F.R.D. at 162.  This is especially true here, as 3DS already has agreed to proceed with patent liability discovery.  Because many of the custodians involved in patent liability issues and antitrust issues (*e.g.*, research and development personnel) will be the same, it would be inefficient and unduly burdensome to ask employees to search their documents twice, sit for depositions twice and perform the various support functions involved in prosecuting or defending any lawsuit twice or even three times, if 3DS is successful in trifurcating the case into a patent liability phase, a patent damages phase and then an antitrust phase.

3DS's remaining arguments do not begin to approach the quantum of "good cause" necessary to impede the orderly process of discovery here.  First, 3DS's suggestion that Desotech's discovery requests are overly broad (Br. at 4) has nothing to do with good cause. The proper form of relief for 3DS in such circumstances is not to seek a stay of all antitrust discovery, but rather to negotiate the scope of the discovery requests with opposing counsel or to seek a protective order narrowing the scope. *Syngenta Seeds*, 2007 WL 3256848, at *2 n.2 ("If defendants believe that the scope of plaintiffs' discovery requests are too broad or too burdensome for now, in light of the pending dismissal motion, they have a right to seek a protective order narrowing the breadth.").  In refusing to make even any production of documents or information related to the antitrust claims, 3DS has opted for a sledgehammer instead of a scalpel.

Second, 3DS's argument that a stay is warranted because of the alleged strength of its motion to dismiss is fundamentally flawed. Br. at 1 (claming that its motion to dismiss "show[s] that Desotech has failed to satisfy the pleading standard of *Twombly*"). As Desotech demonstrated in its response to 3DS's motion to dismiss, 3DS's motion reaches this conclusion only by misapprehending *Twombly,* re-characterizing the allegations of Desotech's Amended Complaint, improperly inserting factual issues and relying upon numerous summary judgment cases in which a developed factual record existed. Courts in this District have consistently refused to grant stays based on a defendant's touting of its own motion to dismiss and have rejected such self-serving statements as speculative. The *Niederhoffer* court reasoned that it would be "pure speculation" to assume that "defendant's motion to dismiss will be successful." 1999 WL 731773, at *1. The court emphasized that its "authority to stay discovery must be exercised so as to secure the just, speedy and inexpensive determination of every action" and that "[w]here the court finds interference in the discovery process is unlikely to significantly expedite the litigation, and may actually slow it down, it will decline to interfere." *Id.* (citing *Builders Assoc. of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996)). The court in *Cohn* expressed a similar concern, stating that it did not "find any justification in delaying discovery" because "the likelihood of the motion [to dismiss'] total success is somewhat speculative" and that a stay "would essentially delay or prolong discovery, thereby causing management problems which would impeded the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." 147 F.R.D. at 162.

Third, 3DS's references in its memorandum to the "DSM conglomerate" with "more than 23,000 people across five continents" reveals the absence of any serious argument in favor of a stay. Br. at 4. The so-called "DSM conglomerate" is not a party to this lawsuit, nor is Dutch

company Koninklijke DSM N.V.  DSM Desotech Inc., a 220-employee company based in Elgin, Illinois, is.  By contrast, according to its most recent 10-K filing, 3D Systems Corporation has 332 full-time employees.  3D Systems Corp. Form 10-K, filed March 17, 2008, p. 9.  That 3DS resorts to invoking a non-party across the Atlantic to suggest that 3DS faces some unique burden underscores the intellectual bankruptcy of its position.

Simply put, none of the potentially applicable examples of good cause that this District has accepted for a discovery stay apply to this case, which might explain 3DS's silence on this essential aspect of its Rule 26(c) request.  Given 3DS's complete silence on "good cause," it has not met the "heavy burden of making a strong showing" that discovery should be stayed.  *Gray*, 133 F.R.D. at  40 (internal quotation omitted).  Nor can 3DS attempt for the first time to demonstrate good cause in its reply brief, when it has completely ignored this essential element in its opening brief and thereby has prevented Desotech from addressing any such argument.  *Ippolito v. WNS, Inc.*, 864 F.2d 440, 455 n.12 (7th Cir. 1988) ("Arguments that are raised for the first time in a reply brief are waived.").  Because 3DS has not demonstrated and cannot demonstrate good cause, as required by Rule 26(c), its motion for a stay should be denied.

## IV.    The Protective Order Being Negotiated by the Parties Adequately Safeguards Proprietary Information

Finally, 3DS argues that a stay of antirust and state law discovery is warranted because confidential business information and potential trade secrets might be exchanged in discovery.  Br. at 5-7.  This is a *non sequitor*, because 3DS's argument about confidentiality relates to the *fact* of production, not the *timing* of production.[9]  In any event, 3DS offers no authority for the

---

[9] Perhaps this is why many of the cases 3DS cites in its memorandum purportedly in support of stay never discuss a stay.  *See, e.g., Bell Atlantic Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, 1995 WL 13115 (S.D.N.Y. Jan. 13, 1995); *Everco Indus., Inc. v. O.E.M. Prods. Co.*, 362 F. Supp. 204 (N.D. Ill. 1973).

proposition that discovery is barred in an antitrust case in which participants in the same industry sue each other. It is precisely under such circumstances that protective orders are routinely entered, and Desotech and 3DS are presently negotiating the terms of such a protective order for ultimate submission to this Court. *See* Fed. R. Civ. P. 26(c)(1)(G) (order may be entered to protect confidentiality of "trade secret or other confidential research, development, or commercial information"). It will be two-tiered, such that the most sensitive and competitive data will not be disclosed to business executives at the opposing company. This protective order will be more than sufficient to address the concerns 3DS raises, which in any event have nothing to do with a stay.

## V.     Conclusion

Delayed discovery can prejudice the administration of justice. *Lithgow v. Edelmann*, 247 F.R.D. 61, 62 (D. Conn. 2007); *OMG Fidelity, Inc. v. Sirius Tech., Inc.*, 239 F.R.D. 300, 304 (N.D.N.Y. 2006). This case is now almost six months old and Desotech's discovery requests were served more than two months ago. To date, 3DS has refused to produce any documents or to give substantive answers to most of Desotech's interrogatories, instead relying on rote objections. As time goes on, "[u]ndue delay can . . . impair the system's accuracy:  memories fade over time, witnesses move on, evidence becomes stale." *United States v. Neuendank*, 278 F. Supp. 2d 899, 905 (N.D. Ill. 2003). The prejudice that a stay would cause is particularly strong in antitrust cases where, as here, "proof is largely in the hands of the alleged [wrongdoer]." *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976) (internal quotation omitted).

By refusing to provide any documents or information related to Desotech's antitrust allegations until the Court rules on its motion to dismiss, 3DS granted its own motion for a stay. But the law—including this Court's standing procedures, the Supreme Court's decision in

*Twombly* and the well-pleaded allegations of Desotech's 29-page Amended Complaint—allows

no such action.  Not only should its motion be denied, but 3DS should be directed to comply

immediately with its discovery obligations so that this case can move forward.


Dated:  September 9, 2008                    Respectfully submitted,

                                             *Plaintiff DSM Desotech Inc.*


                                             By: _/s/ Britt M. Miller_____
                                                     One of its attorneys

Bruce M. Gagala                              Andrew S. Marovitz
Jeffrey B. Burgan                            Britt M. Miller
LEYDIG, VOIT & MAYER, LTD.                   Thomas V. Panoff
Two Prudential Plaza, Suite 4900             MAYER BROWN LLP
180 North Stetson Avenue                     71 South Wacker Drive
Chicago, Illinois 60601                      Chicago, Illinois 60606
(312) 616-5600                               (312) 782-0600
(312) 616-5700 – fax                         (312) 701-7711 – fax

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DSM DESOTECH INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 08-C-1531 |
| | ) | |
| v. | ) | Hon. Joan H. Lefkow |
| | ) | |
| 3D SYSTEMS CORPORATION and | ) | |
| 3D SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**3D SYSTEMS' ANSWERS AND OBJECTIONS TO
PLAINTIFF DESOTECH'S FIRST SET OF INTERROGATORIES**

3D Systems Corporation and 3D Systems, Inc. (collectively, "3D Systems") hereby

provides the following answers and objections to Desotech's First Set of Interrogatories.  All

answers and objections are provided subject to and specifically incorporate 3D Systems' General

Objections and Objections to Definitions and Instructions, which are set forth in Attachment A.

All confidential information to be produced by 3D Systems will be produced after the entry of

and pursuant to an appropriate Protective Order entered by the Court.

**ANSWERS AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1:**  Identify the current and former officers, directors, employees, agents and contractors of 3D Systems Corporation and/or 3D Systems, Inc. who had any decision-making authority or supervisory responsibility with respect to each of the following:

> A)  Whether to sell or distribute, and/or the terms and conditions of sale or distribution, for all large-frame SL machines and SL resins sold or distributed by 3DS in the United States;

> B)  The development and implementation of the RFID feature, including whether and when to implement the RFID feature on large-frame SL machines sold by 3DS in the United States;

> C)  The refurbishment or repair of any large-frame SL machines sold by 3DS in the United States, including 3DS's relationship, if any, with providers of maintenance

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed:

Information regarding communications and agreements between 3D Systems and providers of maintenance or refurbishing services that are identified in the Amended Complaint, to the extent that those communications and agreements refer or relate to the exclusive use of approved stereolithography resins in systems alleged to be tying products in the Amended Complaint. Pursuant to Fed. R. Civ. P. 33(d), 3D Systems may produce business records from which an entire or partial answer may be determined and will supplement its answer if appropriate.

**INTERROGATORY NO. 5:** For each purchaser and prospective purchaser of large-frame SL machines sold by 3DS, identify and describe all restrictions and/or limitations 3DS has placed on, required of, or demanded of, that customer or prospective customer relating to the resins it may use in its large-frame SL machines and/or the resin suppliers or providers from whom it may purchase resins for use in large-frame SL machines, including the manner by which 3DS imposed, required or demanded those restrictions and/or limitations and the date(s) on which the imposition, requirement or demand occurred.

**RESPONSE:** 3D Systems objects to Interrogatory No. 5 as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible information and needlessly intrusive on 3D Systems' trade secrets, customer lists and confidential business information in that it seeks information for competitively sensitive financial information for products and customers having nothing to do with this lawsuit, and seeks the requested information for a time period that is unrelated to the allegations of the Amended Complaint. 3D Systems further objects to Interrogatory No. 5 to the extent that it seeks information subject to confidentiality agreements with third parties. 3D Systems further objects to Interrogatory No. 5 as vague and ambiguous in referring to "restrictions and/or limitations."

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed:

Information regarding communications and agreements between 3D Systems and the customers identified in Desotech's Amended Complaint, but only to the extent that those communications and agreements relate or refer to any approval, evaluation, licensing, or qualification process that 3D Systems requires, employs, uses or maintains for the use of stereolithography resins. Pursuant to Fed. R. Civ. P. 33(d), 3D Systems may produce business records from which an entire or partial answer may be determined and will supplement its answer if appropriate.

**INTERROGATORY NO. 6:** Identify and describe all instances in which 3DS, or an agent or affiliated entity of 3DS, informed anyone that:

A)  Resins made by Desotech were not approved, licensed, appropriate or qualified for use with the Viper Pro;

B)  Use of resins that were not approved, licensed, appropriate or qualified would void the customer's warranty on the Viper Pro machine;

C)  Resins for use in the Viper Pro had to be purchased exclusively from 3DS; and,

D)  3DS would not service a large-frame SL machine unless and/or until the customer agreed to purchase its resins exclusively from 3DS.

**RESPONSE:** 3D Systems objects to Interrogatory No. 6 as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible information and needlessly intrusive on 3D Systems' trade secrets, customer lists and confidential business information in that it seeks information for competitively sensitive financial information for products and customers having nothing to do with this lawsuit, and seeks the requested information for a time period that is unrelated to the allegations of the Amended Complaint. 3D Systems further objects to

Interrogatory No. 6 to the extent that it seeks information subject to confidentiality agreements with third parties. 3D Systems further objects to Interrogatory No. 6 parties because it purports to be a single interrogatory but contains multiple subparts and thus is considered to be at least four separate interrogatories. 3D Systems further objects to Interrogatory No. 6 because it is vague and ambiguous in its reference to an "affiliated entity of 3D Systems."

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed:

The information identified in the response to Interrogatory No. 5.

**INTERROGATORY NO. 7:** From October 2004 to the present, identify those Viper Pro customers:

A) For whom 3DS has already activated the RFID feature or has plans to do so, including the date on which it was activated and the manner by which it was activated and/or the date on which the activation is planned and the manner by which it will be activated, as well as the current and former officers, directors, employees, agents and contractors of 3D Systems Corporation and/or 3D Systems, Inc. who had any decision-making authority or supervisory responsibility with respect to such decisions;

B) Who have requested that the RFID feature be activated as well as the current and former officers, directors, employees, agents and contractors of 3D Systems Corporation and/or 3D Systems, Inc. who had any decision-making authority or supervisory responsibility with respect to evaluating such requests; and

C) Who have requested or inquired as to the possibility of not using or employing the RFID feature in their equipment as well as the current and former officers, directors, employees, agents and contractors of 3D Systems Corporation and/or 3D Systems, Inc. who had any decision-making authority or supervisory responsibility with respect to evaluating such requests or inquires.

**RESPONSE:** 3D Systems objects to Interrogatory No. 7 as overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible information and needlessly intrusive on 3D Systems' trade secrets, customer lists and confidential business information in that it seeks

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DSM DESOTECH INC.,                )
                                  )
            Plaintiff,            )
                                  )        Civil Case No. 08-C-1531
      v.                          )
                                  )        Hon. Joan H. Lefkow
3D SYSTEMS CORPORATION and        )
3D SYSTEMS, INC.,                 )
                                  )
            Defendants.           )

## 3D SYSTEMS' RESPONSES AND OBJECTIONS TO PLAINTIFF DESOTECH'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants 3D

Systems Corporation and 3D Systems, Inc. (together, "3D Systems"), provide the following

responses and objections to DSM Desotech Inc.'s First Request for Production of Documents.

All answers and objections are provided subject to and specifically incorporate 3D Systems'

General Objections and Objections to Definitions and Instructions, which are set forth in

Attachment A. Any confidential information to be produced by 3D Systems will be produced

after the entry of and pursuant to a Protective Order entered by the Court.

### RESPONSES AND SPECIFIC OBJECTIONS

**REQUEST NO. 1:**
Each document concerning or related to licenses granted to Sony or any other entity by 3DS as a
result of 3DS's 2001-2002 consent decree with the United States Department of Justice
regarding the acquisition of DTM Corporation.

**RESPONSE:** 3D Systems objects to Request No. 1 because the Request seeks information that

is not relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of

admissible evidence. 3D Systems further objects to Request No. 1 because its request for

"[e]ach document concerning or related" is vague, overbroad and unduly burdensome. 3D

extent that such documents exist within 3D Systems' possession, custody or control, are not privileged or otherwise protected from discovery, and are located through a good faith search made with reasonable diligence.

With respect to documents concerning or relating to the "development" of SLA® machines or any other stereolithography apparatus identified by 3D Systems in response to Interrogatory No. 9, see 3D Systems' objections and response to Document Request No. 33.

**REQUEST NO. 5:**
Each document concerning or relating to the development, marketing, and implementation, or planned implementation, of the Viper™ Pro's RFID feature.

**RESPONSE:** 3D Systems objects to Request No. 5 as overbroad, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible information and needlessly intrusive on 3D Systems' trade secrets, customer lists and confidential business information in seeking competitively sensitive documents having no relevance to this lawsuit. 3D Systems further objects to Request No. 5 because its request for "[e]ach document concerning or related" is vague, overbroad and unduly burdensome. 3D Systems further objects to Request No. 5 because the definition of "marketing" is overbroad and unduly burdensome.

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed:

Documents that 3D Systems has agreed to produce in response to Desotech's Interrogatory No. 7, to the extent that such documents exist within 3D Systems' possession, custody or control, are not privileged or otherwise protected from discovery, and are located through a good faith search made with reasonable diligence.

**REQUEST NO. 6:**
Each document concerning or relating to a contract, agreement, or arrangement between 3DS and National RP Support, Inc., or any other provider of maintenance or refurbishing services to users of large-frame SL machines.

**RESPONSE:** 3D Systems objects to Request No. 6 as overbroad, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible information and needlessly intrusive on 3D Systems' trade secrets, customer lists and confidential business information (1) in seeking competitively sensitive financial information for products and customers with no relevance to Desotech's allegations, and (2) for a time period that is unrelated to the allegations of the Amended Complaint. 3D Systems further objects to Request No. 6 because its request for "[e]ach document concerning or related" is vague, overbroad and unduly burdensome.

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed:

Documents reflecting communications or agreements between 3D Systems and providers of maintenance or refurbishing services that are identified in the Amended Complaint, but only those communications and agreements that refer or relate to the exclusive use of approved stereolithography resins in systems alleged to be tying products in the Amended Complaint, and only to the extent that such documents exist within 3D Systems' possession, custody or control, are not privileged or otherwise protected from discovery, and are located through a good faith search made with reasonable diligence.

**REQUEST NO. 7:**
Each document concerning or relating to the terms and/or conditions under which users may receive maintenance or refurbishing services for their large-frame SL machines, whether or not those services are provided by 3DS.

**RESPONSE:** 3D Systems objects to Request No. 7 as overbroad, unduly burdensome, not relevant, not reasonably calculated to lead to the discovery of admissible information and needlessly intrusive on 3D Systems' trade secrets, customer lists and confidential business information (1) in seeking competitively sensitive information for products and customers with no relevance to Desotech's allegations, and (2) for a time period that is unrelated to the allegations of the Amended Complaint. 3D Systems further objects to Request No. 7 because its request for "[e]ach document concerning or related" is vague, overbroad and unduly burdensome.

Subject to and without waiving its general and specific objections, 3D Systems states that it will provide the following information if and when the Court determines that Desotech's Amended Complaint meets the threshold of plausibility required by the courts before the inevitably costly and protracted discovery of antitrust cases may proceed:

Documents showing communications between 3D Systems and the customers identified in Desotech's Amended Complaint regarding the provision of maintenance and refurbishing services for systems alleged to be tying products in the Amended Complaint for customers identified therein, from March 2004 to March 2008, to the extent that such documents exist within 3D Systems' possession, custody or control, are not privileged or otherwise protected from discovery, and are located through a good faith search made with reasonable diligence.