**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **DSM DESOTECH INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 08 CV 1531** |
| v. | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **3D SYSTEMS CORPORATION,** | ) | |
| **3D SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of an eight-count complaint filed by plaintiff DSM Desotech, Inc.

("Desotech") against its competitors 3D Systems Corporation and 3D Systems, Inc. (collectively,

"3DS" or "defendants") for violations of federal antitrust law, state antitrust law, state tort law,

and federal patent law.  Before the court are two motions brought by 3DS.  First, 3DS moves to

stay discovery on all antitrust and state law claims pending the outcome of its motion to dismiss

such claims.  Second, 3DS moves to bifurcate the patent liability and patent damages issues of

the willful infringement claim filed against it and, additionally, to stay discovery of patent

damages until liability has been determined.  For the reasons set forth below, defendants' motion

to stay discovery on the antitrust claims [#46] will be granted, and defendants' motion to

bifurcate trial and stay discovery on the patent claims [#48] will be denied.

## BACKGROUND

3DS is a manufacturer of large-frame stereolithography ("SL") machines.  SL is a

process by which a physical object, such as a model, is created layer by layer from liquid resin

that is solidified into shape with a laser.  Desotech is a leader in the SL resin market and the holder of two equipment patents allegedly covering the resin recoating technology used in eight of the SL machines produced and sold by 3DS.  In addition to their claim of willful patent infringement (Count VIII), Desotech has alleged anticompetitive behavior on the part of 3DS in violation of sections 1 and 2 of the Sherman Act, section 3 of the Clayton Act, the Illinois Antitrust Act, and the Illinois Uniform Deceptive Trade Practices Act (Counts I–VII).  Desotech further alleges that 3DS has tortiously interfered with its prospective economic advantages in violation of Illinois law (Count VII).

3DS has denied liability, raising several affirmative defenses to the patent infringement alleged in Count VIII.  Also, in a separate motion, 3DS has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all antitrust and state law claims filed against it in Counts I–VII.

In the present two motions, 3DS seeks to alter the ordinary course of discovery on all eight counts by asking the court (1) to stay discovery on the antitrust and state law claims pending the outcome of its motion to dismiss, and (2) to bifurcate the patent claim, yielding separate trials on patent liability and patent damages and, additionally, to stay discovery of patent damages until such time as liability has been determined.

## DISCUSSION

### I.  Motion to Stay Discovery of Antitrust and State Law Claims

District courts enjoy extremely broad discretion in controlling discovery.  *Crawford-El* v. *Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); *Patterson* v. *Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).  In accordance with Federal Rule of Civil Procedure 26(c), a court may limit the scope of discovery or control its sequence in order to

2

"protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Britton*, 523 U.S. at 598. Such a motion will only be granted, however, "for good cause" and after the moving party has certified to the court that it "has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute." Fed. R. Civ. P. 26(c)(1); N.D. Ill. L.R. 37.2.

Accordingly, the mere filing of the motion does not automatically stay discovery. *SK Hand Tool Corp.* v. *Dresser Industries, Inc.*, 852 F.2d 936, 945 (7th Cir. 1988). Nor does it mean that a court will automatically grant a stay pursuant to Rule 26(c) simply because a defendant asks for one. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 336 (N.D. III. 2005). Nevertheless, stays are granted with some frequency. *Id.* Courts may limit discovery in myriad situations, including when a defendant files a motion to dismiss pursuant to Rule 12(b)(6), but in a majority of cases the existence of a dispositive motion is not the sole reason for granting the stay. *Syngenta Seeds, Inc.* v. *BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *1 (N.D. Ill. Nov. 1, 2007). Stays are often deemed appropriate where the motion to dismiss can resolve a threshold issue such as jurisdiction, standing, or qualified immunity or where, in cases such as this one, discovery may be especially burdensome and costly to the parties. *See id.* at *1–2; *In re Graphics Processing Units Antitrust Litigation*, MDL No. 1826, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007).

3DS has certified that it was unable to resolve this dispute with Desotech, which has submitted a motion to compel discovery on antitrust issues since the present motion to stay was first filed. The only issue remaining, therefore, is whether 3DS has shown good cause for the

stay.[1]  In its complaint, Desotech has alleged three separate theories of liability on which it might proceed with its federal antitrust claims:  illegal tying under section 1 of the Sherman Act and section 3 of the Clayton Act, restraint of trade under section 1 of the Sherman Act, and attempted monopolization under section 2 of the Sherman Act.  Desotech has also alleged two state law antitrust claims that may or may not ultimately overlap with the federal antitrust claims.

As the Supreme Court, the Seventh Circuit, and this court have all recognized, discovery in *any* antitrust case can quickly become enormously expensive and burdensome to defendants. *See Bell Atlantic Corp.* v. *Twombly*, — U.S. —, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007) ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.") (citations omitted); *Lupia* v. *Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1167 (7th Cir. 1978) (acknowledging that "antitrust trials often encompass a great deal of expensive and time consuming discovery"); *Asahi Glass Co.* v. *Pentech Pharm., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) (Posner, J., sitting by designation) (requiring that "some threshold of plausibility . . . be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").  Where, as here, not one, but multiple independent theories of antitrust liability have been presented, the potential burden on defendants will likely be even higher, as the scope of discovery must be further broadened to encompass each type of anticompetitive action alleged.

---

[1]  As Desotech points out, 3DS did not couch its motion in the language of "good cause." The motion does argue, however, that a stay should be granted because of the lopsided discovery burdens imposed by the antitrust portion of this case—in other words, good cause.  To deny defendants' motion because it failed to invoke the "good cause" label in its opening motion would elevate form over substance, a position this court declines to take.

Recognition by the courts of the hefty costs associated with antitrust discovery is not, as Desotech correctly points out, tantamount to an automatic prohibition on discovery in every antitrust case where defendants challenge the sufficiency of a complaint. Such recognition does, however, suggest that the court should be particularly mindful of the course of discovery it will authorize in antitrust cases.

Here, 3DS is facing potential liability on six separate antitrust claims. The business records 3DS has been asked to produce span a period of at least eight years of activity. *See* Defs.' Memo in Support of Mot. to Bifurcate (Dkt. No. 50), Ex. A, at 11.[2] More importantly, the information 3DS has been asked to disclose includes "every 3D Systems sales contract for four different 3D Systems stereolithography machines; every sales and marketing document for all 3D Systems stereolithography machines; large categories of third-party contracts; technical designs, manufacturing drawings and test results; complex financial records and reports; vast amounts of customer data, including every piece of communication with customers and potential customers," as well as other internal communications—information that, in addition to being extensive, voluminous, and expensive to produce, is also highly sensitive subject matter to turn over to one's competitor.[3] Defs.' Memo. in Support of Mot. to Stay Certain Discovery (Dkt No. 47), at 5.

---

[2] Although the interrogatories given to the court in the cited exhibit were offered in support of 3DS's motion to bifurcate trial on the patent claims, Desotech admits in its memorandum opposing that motion that many of its discovery requests go to both the antitrust counts and the patent counts. Pl.'s Memo Opp. to Mot. to Bifurcate (Dkt. No. 53), at 2.

[3] Of course, these burdens on 3DS will not bar such discovery if Desotech's complaint survives, in whole or in part, the motion to dismiss that is currently pending. In that case, discovery would continue and the parties would generally have to rely on protective orders and other discovery tools to safeguard confidential information.

Absent circumstances presenting a compelling need for prompt discovery—as there might be if, for example, provisional relief were being sought or if testimony needed to be preserved due to the ill health of a witness—the court finds that the principles underlying *Twombly* counsel in favor of granting defendants' motion to stay. *See, e.g.*, *In re Graphics Processing Units Antitrust Litigation*, 2007 WL 2127577, at \*4–5 ("To be sure, to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*, at least when the discovery would be burdensome."). Defendants' motion to temporarily stay certain discovery pending the outcome of their motion to dismiss is therefore granted.[4]

## II.  Motion to Bifurcate Patent Claim and to Stay Discovery of Patent Damages

Rule 42(b) of the Federal Rules of Civil Procedure states that a court may order a separate trial of any claim or issue "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The decision to bifurcate pursuant to Rule 42(b) is made on a case-by-case basis and is committed to the discretion of the district court. *Real* v. *Bunn-O-Matic Corp.*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *see also McLaughlin* v. *State Farm Mut. Auto. Ins. Co*, 30 F.3d 861, 870 (7th Cir. 1994). The court, however, must be mindful of the factfinder's traditional role, which ordinarily is to make a determination on the basis of the case presented in its entirety. *Real*, 195 F.R.D. at 620. Consequently, bifurcation in patent cases, as in others, is the exception, not the rule. *Id.*; *Trading Techs. Int'l* v. *eSpeed, Inc.*, 431 F. Supp. 2d.

---

[4] The court is mindful that 3DS has thus far taken it upon itself, without court approval, to withhold discovery on these claims and cautions 3DS to ensure that it complies with Desotech's legitimate discovery requests moving forward. The court also recognizes, however, that the purpose of the present motion almost certainly would have been frustrated had 3DS fully complied with all of Desotech's discovery requests up to this point.

834, 836, 840 (N.D. Ill. 2006). Separate trials should not be ordered "unless such a disposition is clearly necessary." *Real*, 195 F.R.D. at 619 (internal quotation marks and citations omitted).

In those cases in which motions to bifurcate have been granted, the facts and circumstances were such that bifurcation lent itself to judicial economy while not unduly prejudicing any party. *William Reber, LLC* v. *Sony Ericsson Mobile*, No. 03 CV 4174, 2004 WL 2535074, at *2 (N.D. Ill. Sept. 27, 2004) (hereinafter "*Reber II*"). Such circumstances include but are not limited to "a) a need for voluminous documents to resolve damage issues; b) complex infringement issues; c) multiple patents, infringing products, claims, counterclaims or parties; or d) the probability that the defendant would prevail on the infringement issue, thereby eliminating the need to address the issue of damages." *Id.*; *Real*, 195 F.R.D. at 621. The party seeking bifurcation bears the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials. *William Reber, LLC* v. *Samsung Elecs. Am., Inc.*, 220 F.R.D. 533, 536 (N.D. Ill. 2004) (hereinafter "*Reber I*") (citing *Novopharm Ltd.* v. *Torpharm, Inc.*, 181 F.R.D. 308, 310 (E.D.N.C. 1998)).

Desotech has asserted willful patent infringement of two of its U.S. Patents, Numbers 6,340,297 ("the '297 Patent") and 6,733,267 ("the '267 Patent"). Both patents are directed to a component of the SL machine called the "recoater," which adds and shapes a new layer of liquid resin to the object being created. Patent '297 has 12 patent claims and Patent '267 has 29 patent claims. According to 3DS, eight of its machines are implicated by the technology documented in these patents, and each might be at issue in the current litigation. As a result of the large number of potential claims involved, 3DS argues that this case will require hundreds of gigabytes of

documents to prove financial damages and will involve many complicated questions of technology to be decided by the jury.

3DS has filed the current motion in an attempt to simplify the complicated nature of this case.  First, 3DS asks the court to bifurcate the patent claim into two portions:  (1) liability and (2) willfulness of infringement and damages.  3DS argues that bifurcation is required because of (a) the need for voluminous documents to resolve the damages issues; (b) the complexity of the infringement issues, (c) the need to avoid the risk of prejudice to the defendants due to the inadvertent disclosure of sensitive financial information, and (d) bifurcation will promote judicial economy.  Second, 3DS asks the court to stay discovery of the damages potion until such time as liability has been assessed—or, in other words, only upon Desotech's success at the first trial.  3DS asserts that there is little overlap between patent liability and damages in this case—particularly if, as it urges, the issue of willfulness is tried with the damages portion of the bifurcation.  Consequently, 3DS contends, proceeding in this fashion will assure substantial savings of judicial time and litigant resources.  For the reasons discussed below, the court does not find 3DS's arguments to be persuasive.

### A.  Voluminous Documentation

3DS claims that the documents it has been asked to produce and the interrogatories it has been asked to answer in response to Desotech's discovery of patent damages will require sifting though hundreds of gigabytes of emails and documents.  Desotech, on the other hand, has stated that it seeks to use a "reasonable royalty" calculation for the measure of its patent damages and that the most "basic financial information" will suffice in this regard.  Pl.'s Memo in Opp. to Bifurcation at 1.

The gap between the parties' positions on this issue appears to stem from the seven antitrust and tort claims that are also pending in this case. Desotech acknowledges that it has sought information pertaining to 3DS's financial forecasts, market share information, and customer/supply agreements—requests that will undoubtedly require a large quantity of data to adequately answer. Desotech asserts, however, that such requests are meant to prove both patent damages *and* antitrust liability. Such evidence is, of course, often central to antitrust litigation. The likelihood of some degree of overlap in evidence regarding, on the one hand, antitrust liability (should those claims survive the pending motion to dismiss) and, on the other hand, patent damages, thus discourages the court from bifurcating the patent damages portion of this case.

Furthermore, other than requests for financial information, which may be considered ancillary to the issue, the court finds little indication that the damages aspects of plaintiff's patent claims will require any greater volume of documents than in a typical patent case that can be resolved in a single trial. *See Real*, 195 F.R.D. at 622–23 (holding bifurcation inappropriate despite the plaintiff's seeking to prove both reasonable royalties and lost profits as measures of damages).

**B. Complexity and Multiplicity**

As for the complexity of the case, it too appears to be no more intricate than a typical patent case. In *Reber II*, the court vacated a bifurcation order it had previously granted because the case had become significantly less complex than it had once been. 2004 WL 2535074, at *2. The original motion to bifurcate was granted when the claim was against six co-competitor defendants, discovery involved thousands of documents written in various languages other than

English, witnesses spoke languages other than English, and many of the documents and witnesses needed to determine damages were located outside of the United States. *Reber I*, 220 F.R.D. at 535. Due to these extraordinary circumstances, bifurcation of damages served the interests of judicial economy, efficiency, and simplicity without unduly prejudicing the plaintiff's right to a jury trial. *See id.* As discovery progressed on the liability portion of the patent claim, however, the plaintiff settled with all but one defendant. *Reber II*, 2004 WL 2535074, at *1. Despite the fact that two patents, six claims, and fifteen of the defendant's products remained at issue, the court held that the extenuating circumstances justifying the original bifurcation no longer existed. *Id.* at *3.

Clearly, the circumstances presented by this case do not amount to the global, multi-party litigation presented by *Reber I*. While there may be more potential claims at issue in the present case than there were in the streamlined *Reber II*, the mechanical engineering technology at issue here—involving the "recoater"—appears to be more digestible to the lay juror than does computer or electrical technology. Moreover, although eight of 3DS's products may be implicated by patents '297 and '267, there is little indication that differences between recoating components in each of the particular product will introduce significantly more complexity to the case. Rather, once the initial technology has been explained and understood by the jury, the damages allegedly suffered by Desotech from each newer model should be only marginally more difficult to prove or understand than the first.

### C. Avoiding Prejudice

In *Reber I*, before granting the bifurcation order, the court "strongly considered" the potential "detrimental effects" that inadvertent disclosure of sensitive financial information could

have on the defendants.  *Reber II*, 2004 WL 2535074, at *3.  Because each of the six defendants was in direct competition with one another, the potential detrimental effects of such disclosure outweighed any prejudice to the plaintiff.  *Id*.  In the present case, however, the two defendants are parent and subsidiary, and can hardly be said to be in direct competition with each other.  While Desotech and 3DS do compete in the SL resin market, Desotech does not manufacture SL machines that compete with the machines at issue in this litigation.  Moreover, patent issues often arise between two direct competitors; such a situation is generally handled by two-tiered protective orders of the type already being negotiated by the parties in this case.  Although some sensitive information may inevitably be conveyed during trial, that is the nature of patent litigation.

### D.  Expedition and Economy

The final argument offered by 3DS in support of its motion is that it will save resources for both the court and the litigants, because the issues of patent liability and patent damages do not overlap.  As an empirical matter, the court has regularly rejected this type of claim.  It is precisely because the issues of willfulness, liability and damages generally overlap that bifurcation remains the exception in patent cases, rather than the rule.  *See Trading Techs.*, 431 F. Supp. 2d at 841 (noting that "courts in this district have repeatedly held that bifurcation . . . was inappropriate because issues of liability and willfulness/damages do overlap").  The issue of willfulness in particular has been identified as a factor arguing against bifurcation because it is assessed according to the totality of the circumstances.  *See id*. (recognizing that "where issues to be presented in the two trials sufficiently overlap, bifurcation should be denied" and noting that "evidence of liability and willfulness will likely overlap"); *Real*, 195 F.R.D. at 625–26.

Because bifurcating this trial would prejudice Desotech by requiring it to duplicate its efforts and because 3DS has failed to show that such prejudice would be outweighed by other considerations, the court concludes that bifurcation is inappropriate in this case. Defendants' motion to bifurcate the patent infringement trial and to stay the discovery related thereto [#48] is therefore denied.


**CONCLUSION AND ORDER**

Defendants' motion to stay discovery regarding the antitrust and state law claims pending the court's ruling on the motion to dismiss [#46] is granted, and defendants' motion to bifurcate and stay certain discovery relating to the patent claims [#48] is denied. In order to avoid unnecessary discovery disputes relating to sensitive financial and customer data, however, the court does hereby enter a temporary stay on the discovery of information relating to patent damages pending the outcome of 3DS's motion to dismiss the antitrust and state law claims. Once the antitrust claims in this case are determined, the appropriate scope of discovery on all claims should be better defined, thus lessening the likelihood of subsequent discovery disputes.


Dated:  October 28, 2008                    Enter:_____

                                                                JOAN HUMPHREY LEFKOW
                                                                 United States District Judge