# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sharon Johnson Coleman | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1531 | **DATE** | 1/12/2011 |
| **CASE TITLE** | DSM Desotech Inc. Vs. 3D Systems Corporation | | |

**DOCKET ENTRY TEXT**

3D Systems' Motion to Compel Desotech to Comply with Fed. R. Civ. P. 30(b)(6) and to Provide Additional and Prepared Witnesses for Further Deposition and For Sanctions in Connection Therewith [223] is granted in part and denied in part.

■[ For further details see text below.]                                      Notices mailed by Judicial staff.

---

## STATEMENT

### I.    Background

        This motion concerns Desotech's patent infringement claims.  On the patent claims, Desotech asserts that 3D Systems' machines that use a Zephyr™ recoater infringe two patents, US Patent Nos. 6,340,297 (the '297 Patent-In-Suit) and 6,733,267 (the '267 Patent-In-Suit).3D Systems served a Rule 30(b)(6) Notice of Deposition on Desotech on August 6, 2010 regarding patent topics.  For the 30(b)(6) deposition relating to the patent aspects of this case, Desotech provided John Southwell.

        The parties dispute the adequacy of Mr. Southwell's preparation for the deposition.  3D Systems describes Mr. Southwell as a "lower-level technical employee who did not work for the Somos Business Group of Desotech until after the relevant time periods." (Doc. 225 at 5). 3D Systems contends that Mr. Southwell was not properly prepared at the deposition on October 21, 2010.  In its current motion, 3D Systems requests that Desotech (1) be compelled to provide a prepared witness to address the deficient topics, (2) provide such witness at 3D Systems' counsel's offices in New Jersey, and (3) compensate 3D Systems for its reasonable fees and expenses incurred in bringing this motion and retaking the deposition on the deficient topics.

        Desotech says that it complied with its obligations under Rule 30(b)(6) in designating and preparing Mr. Southwell to testify on its behalf.  Desotech contends that it established prior to the deposition that Desotech would not provide a witness to testify to the extent that the topics called for privileged information or the corporate knowledge of DuPont.  Desotech argues that it is entitled to fees and costs for responding to 3D Systems' unwarranted and untimely motion to compel.

### II.    Discussion

        Federal Rule of Civil Procedure 26(b)(1) prescribes the scope of matters upon which a party may seek discovery.  "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Under Federal Rule of Civil Procedure 30(b)(6), a "named organization must . . . designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf. . . . The persons designated must testify about information known or reasonably available to the organization."  "If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation."  United States v. Taylor, 166 F.R.D. 356, 360 (MD. N.C. 1996).  The goal of the Rule 30(b)(6) requirement is to enable the responding organization to identify the person who is best situated to answer questions about the matter."  Wright & Miller, 8A Federal Practice & Procedure § 2103 (3d ed.).

Desotech asserts several recurrent reasons to deny 3D Systems' motion to compel: (1) certain topics improperly seek to discover the mental impressions and legal opinions of Desotech's counsel; (2) Desotech is not required to have Mr. Southwell speak with former Desotech attorneys to prepare for the deposition; (3) Desotech is not able to speak for DuPont; and (4) certain information sought by 3D Systems would be better obtained through individual depositions.  The Court addresses these recurrent issues below.  The Court's general rulings on these issues should be applied to all specific deposition topics, without regard to whether a particular topic is discussed.

## A.    Work Product Doctrine and/or Attorney-Client Privilege

As for the work product doctrine, Federal Rule of Civil Procedure 26(b)(3)(A) provides that a party ordinarily may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial" by opposing counsel.  Rule 26(b)(3) addresses "documents and tangible things."  The Supreme Court's definition of work product in Hickman v. Taylor, 329 U.S. 495 (1947) also extends to "intangible" things.  U.S. v. Deloitte LLP, 610 F.3d 129, 136 (D.C. Cir. 2010).  "Hickman provides work-product protection for intangible work product independent of Rule 26(b)(3)."  Id. (noting the Hickman court explained that the attorney's "mental impressions" were protected from discovery, so that he could not be forced to "repeat or write out" that information in discovery.).

With regard to the attorney-client privilege, not every communication between counsel and client is privileged.  Rather, the attorney-client privilege applies (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.  United States v. White, 950 F.2d 426, 430 (7th Cir. 1991).  The attorney-client privilege does not generally justify the withholding of purely factual material.  Upjohn Co. v. U.S., 449 U.S. 383, 395 (1981).  "The protection of the privilege extends only to *communications* and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing."  Id. at 395-96.  For example, "[t]he client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney."  Id. at 396.  Finally, it is Desotech's burden to establish that the information it seeks to protect from disclosure is covered by the work product doctrine or other privilege.  U.S. v. BDO Seidman, LLP, 492 F.3d 806, 821 (7th Cir. 2007) (noting the proponent of any privilege bears the burden of establishing each of its elements).

Desotech first argues that 3D Systems' notice which calls for the roles, responsibilities, and dates of involvement of the individuals in the prosecution of the Patents-In-Suit and Related Patents with the USPTO (Topic No. 1), the awareness of these individuals of particular facts (Topic No. 2(c)), communications made to these individuals (Topic 2(d)), the circumstances surrounding the decision to assert the '156 Patent and '297 Patent against Vantico (Topic 8(a)), and the investigation and circumstances relating to the allegation in the complaint against Vantico that 3D Systems makes and sells machines including Zephyr recoaters that are covered by the claims of the '156 Patent and '297 Patent (Topic 8(b)) inappropriately seek to require Desotech's witness to learn, from counsel, information underlying legal opinions in attorney conducted and directed patent prosecution and litigation/arbitration.

Desotech relies primarily on S.E.C. v. Buntrock, 217 F.R.D. 441 (N.D. Ill. 2003), in support of its argument that 3D Systems' 30(b)(6) notice improperly includes topics which seek discovery of the mental impressions and legal opinions of Desotech's counsel. In Buntrock, the Magistrate Judge held that the defendant's 30(b)(6) notice inappropriately attempted to depose opposing counsel and to delve into theories and opinions of SEC attorneys. The court explained that the notice called for information gathered by SEC attorneys and SEC employees working under the direction of attorneys in anticipation of bringing the enforcement action. The Buntrock court found that the topics specified in the 30(b)(6) notice improperly sought to ascertain "how the SEC intends to marshal its facts, documents, and testimony evidence, and to discover the inferences the SEC believes can be drawn from that evidence." Id. at 445. Desotech also cites In re Linerboard Antitrust Litigation, 237 F.R.D. 373 (E.D. Pa. 2006), for the proposition that a 30(b)(6) witness is not required to speak with in-house counsel to educate himself with all of the facts that counsel recalled from an investigation. In Linerboard, the attorney's recollection of an internal investigation was not memorialized in any memorandum or notes. Plaintiffs asserted that any additional facts of which in-house counsel had knowledge were discoverable because they were facts known to the corporate defendant. The district court rejected the plaintiffs' argument. The Linerboard court held that the defendant was not required to produce a 30(b)(6) witness educated by conversations with in- house counsel because the 30(b)(6) witness produced by defendant was adequately prepared, plaintiffs had extensive non-privileged sources of the same information they sought from in-house counsel available to them, and the information plaintiffs sought was not crucial to their case.

3D Systems responds by arguing that the work product doctrine does not prevent Desotech from preparing its 30(b)(6) witness with facts known by its lawyers. 3D Systems relies on Protective Nat'l Ins. v. Commonwealth Ins. Co., 137 F.R.D. 267 (D. Neb. 1989), to support its claim that it is not seeking information protected by work-product. In Protective, plaintiff sought to discover during the 30(b)(6) deposition of defendant's spokesperson what facts she was aware of that supported allegations in the answer and counterclaim and the damages claimed. The Protective court stated that "[t]here is simply nothing with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel." Id. at 280. The court held that the plaintiff was entitled to discover the information it sought, "which was the factual basis for contentions contained in the counterclaim and answer and the factual basis for the damages claimed." Id. at 282. The court found that the questions posed by plaintiff to the 30(b)(6) deponent did not improperly threaten to disclose the mental impressions of the lawyers for the defendant. Id.

With this background, the Court addresses the specific deposition topics challenged by Desotech on the grounds of work-product protection and/or attorney-client privilege. 3D Systems' Topic No. 1 seeks the roles, responsibilities, and dates of involvement of the individuals involved in the patent prosecution from 1990 to 2004. The identities of persons involved in the patents' prosecution (including counsel), their roles, responsibilities, and dates they were involved does not reveal the thoughts and opinions of counsel developed in anticipation of litigation and therefore, does not constitute attorney work product. 3D Systems "is not seeking the mental processes of attorneys in advising Desotech, or otherwise formulating legal strategy in prosecuting the various patents." (Doc. 225 at 7). Moreover, Desotech has not established that information concerning roles, responsibilities, and dates of involvement of the individuals involved in the patent prosecution is protected by the work product doctrine simply because the prosecution of the patents was conducted and directed by counsel. See In re Gabapentin Patent Litigation, 214 F.R.D. 178, 184 (D. N.J. 2003) (stating "[g]enerally work performed by an attorney to prepare and prosecute a patent does not fall within the parameters of the work product protection" since it is not done in anticipation of litigation.). Nor does Topic No. 1 seek information protected by the attorney-client privilege. The roles, responsibilities, and dates of involvement of the individuals involved in the patent prosecution does not seek attorney-client communications. Desotech has not explained how such information would directly or indirectly reveal the substance of a confidential communication. Desotech's corporate representative can provide testimony about Topic No. 1 without implicating any privilege communications.

Topic 2(c) seeks to ascertain whether persons who participated in or supervised the prosecution of the Patents-In-Suit and Related Patents were aware of the Zephyr™ recoater, including the first dates of awareness by such persons. With regard to work-product immunity, Desotech has not established that Topic 2(c) seeks

to discover the mental processes and legal opinions of Desotech's counsel. Desotech also relies on the attorney-client privilege in objecting to 3D Systems' Topic 2(c). (Doc. 229 at 11). Whether attorneys prosecuting the patent applications were aware of the Zephyr™ recoater at the time changes to the patent claims were made (in 1996, 1997, and 2000) are discoverable facts. The legal reasons why the claims were changed are privileged and nondiscoverable, but 3D Systems does not seek the mental processes of the attorneys who drafted the claims, the reasons why the claims were modified, the legal advice sought or given as to the pros and cons of broadening the claims, the reasons for broadening the claims, etc. Desotech makes the conclusory argument that the topic of when its in-house counsel and others involved in the patents' prosecution first became aware of the Zephyr™ recoater is not a discoverable fact because the purported "facts" are intertwined with the seeking of or rendering of legal advice. Because Desotech has not developed its argument beyond this singular statement, Desotech has not established that the awareness of 3D Systems' Zephyr™ recoater by persons involved in or supervising the patents prosecution is inextricably intertwined with confidential communications made for the purpose of obtaining legal advice or the legal advice itself.

3D Systems' Topic No. 2(d) was only partially answered by Mr. Southwell. Mr. Southwell testified that he recalled seeing a 1999 memo from 3D Systems to Mr. Mickish that related to SLA 7000 with a Zephyr™ recoater. Mr. Southwell testified that he did not try to learn Mr. Mickish's role in the prosecution of the patents and he also did not try to determine if the memo was provided to anyone else involved in the prosecution. Desotech's counsel did not object on the basis of the work-product doctrine or attorney-client privilege or instruct Mr. Southwell not to answer these questions. (Doc. 225, Exh. D at 104:22-106:22). 3D Systems' motion to compel is granted with respect to these questions.

Topics 8(a) and 8(b) sought information regarding the Desotech complaint against Vantico (a third-party company) and the subsequent settlement of the lawsuit including the decision to assert the '156 Patent and '297 Patent against Vantico (Topic 8(a)) and the investigation and circumstances relating to Desotech's allegation that 3D Systems has manufactured and sold and continues to make and sell apparatus including Zephyr recoaters that are covered by the claims of the '156 Patent and '297 Patent (Topic 8(b)). In its Response and Objections, Desotech objected to Topic 8 to the "extent it seeks testimony regarding information that is subject to attorney-client privilege, work product immunity, or both." Subject to its objections, Desotech agreed to "designate a witness to testify generally about Desotech's decision to assert U.S. Patent Nos. 6,174,156 and 6,340,297; the investigation and circumstances relating to Desotech's allegations made in Paragraphs 19, 20, 21, and 23 of the complaint against Vantico and the persons involved." For this topic, Mr. Southwell prepared a "list of people of who may be involved regarding Topic 8 in the complaint against Vantico and the subsequent arbitration." Southwell Dep. at 120. The list included Geri Gashkoff (Desotech's in-house counsel), Mark Paulson, Jim Reitz, Donald Parsons, Kevin Kramer, and Danielle Avoilio. 3D Systems complains that the only person Mr. Southwell spoke to on the list was Jim Reitz, and Mr. Southwell had only limited access to Mr. Reitz. The Court agrees with Desotech that 3D Systems can not dictate how Desotech prepares its 30(b)(6) witness. However, as Desotech acknowledges, 3D Systems is entitled to discover the non-privileged details of the Desotech-Vantico dispute, including the role of Ms. Gashkoff and the other persons listed on the exhibit in the Vantico litigation. Desotech has not established that a general description of the roles played by persons involved in the Vantico litigation is shielded by the work-product doctrine or attorney-client privilege, regardless of whether those facts are within the knowledge of counsel.

## B.    Former Desotech Attorneys

3D Systems argues that Mr. Southwell was not properly prepared on certain topics because he did not speak with former Desotech attorneys Mark Paulson and Paul Sharer. After Desotech purchased Somos in 1999 from DuPont, Desotech hired two outside attorneys, Messrs. Paulson and Sharer, to continue prosecuting the patent application DuPont filed in 1997 and to file and prosecute two continuations based on the DuPont applications. These same attorneys were involved in a patent dispute between Desotech and Vantico in 2002-2004 that was eventually settled. In January 2002, Desotech sued Vantico in the District of Delaware. At that time, Vantico was a supplier of resins to customers of 3D Systems. Desotech claimed that 3D Systems' machines with Zephyr™ recoater were covered by the claims of the '297 Patent (and another related patent,

the '156 Patent) that Desotech has sued 3D Systems on in this case. Vantico was sued for allegedly inducing infringement and contributing to the infringement of the '297 Patent-In-Suit and the '156 Patent that Desotech alleged covered 3D Systems' machines with the Zephyr™ recoater. Messrs. Paulson and Sharer are now partners at Jones Day, one of the law firms that represents 3D Systems in this litigation.

As part of its laches and estoppel defenses, 3D Systems is seeking to discover what Desotech knew about 3D Systems' machines with a Zephyr™ recoater at the time Desotech sued Vantico in 2002. One of 3D Systems' Rule 30(b)(6) topics was directed to Desotech's knowledge of the 3D Systems machines with Zephyr™ recoaters from 1996-2004, which includes the time (2002) when Desotech sued Vantico. 3D Systems argues that if Desotech and/or its counsel had knowledge of the construction of 3D Systems' machines with Zephyr™ recoaters, but chose only to sue Vantico and not 3D Systems, such decision raises the issue of laches and gives rise to affirmative conduct upon which 3D Systems could rely as indicating that Desotech would not be asserting the '297 Patent against 3D Systems (3D Systems' estoppel defense).

Desotech argues that the information 3D Systems seeks is protected from disclosure under the attorney-client privilege and as attorney work product. Desotech says it does not presently intend to waive its privilege with Messrs. Paulson and Sharer regarding any attorney-client communications they had with Desotech or attorney work product created as a result of their representation of Desotech on the topics 3D Systems noticed. Further, Desotech argues that its corporate representative has no duty to contact Messrs. Paulson and Sharer in preparing for its deposition because Messrs. Paulson and Sharer are foreclosed from communicating with Desotech by both Local Rule 83.51 and an agreement between the parties. Desotech says that by agreement of the parties, the two Jones Day attorneys are screened to protect Desotech's and 3D Systems' privileged information in an attempt to avoid conflicts of interest. On April 29, 2008, Desotech wrote to Jones Day requesting that Messrs. Paulson and Sharer be shielded from any involvement in this action in light of the possible conflict. Jones Day responded, stating "Jones Day has put in place appropriate safeguards to protect against possible inadvertent disclosure of any confidential information and to ensure that neither Mark [Paulson] nor Paul [Sharer] has any exposure to or involvement in the current dispute between Desotech and 3D Systems." (Doc. 229, Exh. B). The safeguards Jones Day put in place include those contained in Local Rule 83.51.10 (N.D. Ill). Id.

With regard to Desotech's privilege and work-product argument, 3D Systems seeks to discover whether Desotech, through attorneys Messrs. Sharer and Paulson, was aware of the construction of the 3D Systems machines with a Zephyr™ recoater at the time Desotech made the allegations in the Vantico complaint in 2002. This is purely a factual inquiry which does not seek to elicit privileged material or reveal the thought process of the attorneys involved. Factual material underlying attorney thoughts, ideas, recommendations, opinions, and advice is generally not privileged. Moreover, Desotech has not explained how answering whether attorneys Messrs. Paulson and Sharer were aware of the construction and operation of the 3D Systems machines with the Zephyr™ recoater when it made its allegations in the Vantico complaint will reveal Desotech's investigative and litigation strategies, which are protected areas of work-product.

As to Desotech's second contention that its prior attorneys now work in Jones Day's office in Washington, D.C., Desotech argues that Local Rule 83.51.10(e)(2) prevents Desotech from contacting Paulson/Sharer to discuss information regarding their prior representation of Desotech and prepare for the 30(b)(6) deposition. Local Rule 83.51.10(e)(2) ("the Rule") states that an attorney will be considered screened if "the lawyer has been isolated from all contact with the client or any agent, officer or employee of the client and any witness for or against the client." The parties dispute whether the "client" contemplated in LR 83.51.10(e)(2) corresponds with Desotech or 3D Systems. 3D Systems asserts that the "client" described in the Rule is 3D Systems and therefore, the Rule does not prevent Desotech's corporate representative from contacting the screened attorneys. Desotech contends that "client" refers to the former client, meaning Desotech in this case. The Court agrees with 3D Systems' interpretation of "client." The purpose of the screening procedures is to prevent confidences from being used against a former client. In this case, to prevent possible disclosure of Desotech's confidential information to 3D Systems. Amurol Confections Company v. Morris National, Inc., 2003 WL 21321344, at *2 (N.D. Ill. June 5, 2003) (stating that the issue was whether the present client's law firm had

demonstrated that it established an effective screening procedure to block any disclosure of the former client's confidences by its former attorney to any member or employee of the present client's law firm). Interpreting "client" in LR 83.51.10(e)(2) to mean the former client would not serve the purpose behind the screening procedures.

Putting aside the dispute as to the identity of the "client," Desotech asserts that a proper screening under the plain language of the Rule prevents contact between a witness for either party and Messrs. Paulson or Sharer. Desotech points out that the Rule states that a screened attorney must be "isolated from all contact with . . . any witness *for or against* the client." Desotech argues that this is true regardless of which party is considered the "client" as a witness representing Desotech in a Rule 30(b)(6) deposition is a witness against 3D Systems. Desotech's construction of the Rule is supported by the plain language but seems inconsistent with the real purpose of the screening procedures. As 3D Systems explains, the purpose of the screening procedures is to prevent Paulson/Sharer from disclosing Desotech confidences to 3D Systems or its attorneys (Jones Day) and any witness for or against 3D Systems but not to prevent Paulson/Sharer from having discussions with or sharing previous Desotech confidences with Desotech itself. If Desotech wants to contact its former attorneys Paulson/Sharer for information concerning their prior representation of Desotech, that is a different issue than whether Jones Day properly screened Paulson/Sharer from a witness for or against 3D Systems. Desotech has not cited any authority indicating that the screening procedures were intended to prevent clients from talking to their own former attorneys rather than preventing attorneys who change law firms from disclosing prior client confidences to their firm's new client or its attorneys. Even if Desotech's literal interpretation of the Rule is correct, Desotech can contact Paulson/Sharer regarding their prior representation of Desotech by waiving its right to move for imputed disqualification of Jones Day related to Desotech's contact with Paulson/Sharer regarding their prior representation of Desotech. See LR 83.51.10(d) (stating "[a] disqualification prescribed by this rule may be waived by the affected client under the conditions stated in LR 83.51.7.").

## C.    DuPont

In March 1999, Desotech acquired DuPont's Somos business, including Somos assets, Somos documentation, the Patents-in-Suit and Related Patents, and certain Somos employees, including one inventor on the Patent-In-Suit, Mr. Mickish. 3D Systems argues that a number of topics from its Rule 30(b)(6) notice on which Mr. Southwell was unprepared (Topics 1, 2a, 2d, 5, and 13) sought to elicit Desotech's knowledge of DuPont's awareness of relevant fats. To support its laches and estoppel defense, 3D Systems says it sought to learn, to the extent known by or available to Desotech, what DuPont Somos employees knew about certain facts. 3D Systems complains that Mr. Southwell did not review DuPont's documents that Desotech possessed as to DuPont's awareness of the Zephyr™ recoater. 3D Systems notes that Desotech has in its possession DuPont documents dated prior to the acquisition which indicate that DuPont employees had knowledge of 3D Systems' Zephyr™ recoater prior to the acquisition by Desotech. 3D Systems contends that Desotech's corporate representative should have reviewed DuPont documents and spoken to DuPont employees who continued to work for Desotech after the acquisition as to when they or DuPont had knowledge of the Zephyr™ recoater.

Desotech responds that it is not able to speak for DuPont and is not obligated under Rule 30(b)(6) to do so. Desotech says it does not know what DuPont knew or didn't know, when DuPont may have known something or the context of DuPont's knowledge, if any. Desotech has produced responsive DuPont documents within its possession, custody and control. Desotech does not presently employ former employees of DuPont. DuPont still exists, and Desotech says 3D Systems can obtain DuPont's knowledge through a deposition of DuPont.

## STATEMENT

Under Rule 30(b)(6), Desotech is required to provide a witness to "testify about information known or reasonably available" to Desotech. Fed. R. Civ. P. 30(b)(6). The "purpose of Rule 30(b)(6) was to allow for the streamlined discovery of information known to a particular entity by allowing for the designation of one, or more, specific individuals who would provide binding testimony as to the knowledge of that entity regarding given matters." Covington v. Semones, 2007 WL 1052460, at *1 (W.D. Va. April 5, 2007) (citing Taylor, 166 F.R.D. at 360). The rule does not require one entity which is not under the control of a second entity to inquire into and testify as to the knowledge of the second entity. Id. (quashing subpoena seeking to have defendant entity investigate a second entity and provide information where second entity was not an employee of, subject to, or under the control of the defendant).

Before Desotech purchased the Somos business from DuPont, DuPont's Somos stereolithogrpahy division was not under the control of Desotech. Desotech therefore has no duty to inquire into or provide information as to DuPont's pre-acquisition knowledge regarding the matters at issue. The fact that Desotech acquired DuPont's Somos business in 1999 does not impute DuPont's pre-acquisition knowledge to Desotech. Prior to Desotech's acquisition of DuPont's Somos business in 1999, any awareness of the Zephyr™ recoater or operation of machines with a Zephyr™ recoater by a person associated with DuPont, including the inventors, is personal knowledge of former employees of DuPont. To the extent it is knowledge of any company, it is within the knowledge of DuPont and should not be imputed to Desotech, an unrelated company prior to the acquisition. 3D Systems is free to depose a representative of DuPont to determine the extent of DuPont's pre-acquisition corporate knowledge or awareness of the construction and operation of the Zephyr™ recoater (released in 1996) at the time DuPont was prosecuting the patent application in question and at other times prior to Desotech's acquisition of DuPont's Somos business (in 1999).

3D Systems has not cited a single case to support the proposition that Desotech's corporate representative should have to testify in a manner which binds Desotech regarding DuPont's pre-acquisition knowledge of the Zephyr™ recoater. In Ethypharm S.A. France v. Abbott Laboratories, 2010 WL 4627732, at *9-11 (D. Del. Nov. 15, 2010), the plaintiff sought to compel the corporate deposition of defendant Abbott regarding events that transpired when Abbott had no ownership interest in its wholly-owned indirect subsidiary. The district court granted the plaintiff's motion to compel the Rule 30(b)(6) deposition because Abbott had control over its wholly-owned indirect subsidiary and prior to the acquisition, Abbott was involved in the matters about which the plaintiff sought information. Id., at *11. In sharp contrast, Desotech had no involvement in the stereolithography business prior to the purchase of the Somos division from DuPont. 3D Systems is entitled to seek Desotech's knowledge regarding events at DuPont's Somos business prior to Desotech's acquisition. In fact, Mr. Southwell testified that Desotech's first awareness of the Recoater was shortly before Desotech purchased the Somos business in a due diligence memo. 3D Systems is also entitled to discover what knowledge Desotech acquired from DuPont, but DuPont's pre-acquisition awareness of certain facts cannot be imputed to Desotech.

3D Systems also complains about Mr. Southwell's testimony regarding a 1997 letter from Aaroflex to DuPont relating to Aaroflex's concern that 3D Systems' Zephyr™ recoater blade "is infringing upon DuPont's patents." Mr. Southwell was asked whether Desotech was aware that these allegations had been made at the time of the acquisition by Desotech. Mr. Southwell answered that "any awareness was probably a discussion between DuPont and Desotech legal. It would be privileged." Southwell Dep. at 61. Desotech has not established that when it became aware of an infringement allegation made by a third party reveals a confidential client communication that was made for the purpose of obtaining legal advice. Desotech says that its awareness that DuPont and Aaroflex corresponded is only though the produced documents. That may be, but 3D Systems is entitled to discover from Desotech's corporate representative when Desotech first became aware of the correspondence between Aaroflex and DuPont regarding the Zephyr blade. (Doc. 229 at 10). Desotech is correct that DuPont's pre-acquisition corporate knowledge of its dealings with Aaroflex is not information

known or reasonably available to Desotech.

## D.      Other Means to Obtain the Information

Desotech additionally takes the position that certain information sought by 3D Systems would be better obtained through other means such as individual depositions which it has taken or is in the process of taking. Desotech points out that 3D Systems has already deposed Jim Reitz (Somos' Business Manager during the relevant period) and Christian Clausen (one of the inventors). Desotech's Surreply states that 3D Systems has also taken the personal depositions of Daniel Mickish (inventor) and Geri Gashkoff (Desotech's in-house counsel). Desotech believes that 3D Systems should have inquired of Ms. Gashkoff regarding any non-privileged facts surrounding legal matters (*e.g.*, information relating to Topics No. 1, 2, 8, and 13) because Ms. Gashkoff was involved in the prosecution of the Patents-In-Suit and in the *Vantico* litigation. Desotech argues that 3D Systems had ample opportunity to question each witness regarding any topics that Desotech's corporate representative could have discussed with them. At this point, Desotech concludes, requiring Desotech's corporate representative to question these witnesses about 3D Systems' 30(b)(6) topics would only result in redundant discovery.

The fact that other persons with discoverable information were deposed or will be deposed does not relieve Desotech of its obligations under Rule 30(b)(6). Desotech's argument fails to take into account the purpose of Rule 30(b)(6). A deposition of an individual is not the equivalent of a deposition of an organization under Rule 30(b)(6). Testimony obtained during a Rule 30(b)(6) deposition "represents the knowledge of the corporation, not of the individual deponents." Taylor, 166 F.R.D. at 361 (explaining that a Rule 30(b)(6) designee "does not give his personal opinions," but instead "presents the corporation's 'position' on the topic."). An individual's testimony is limited by "memory [that] is no more extensive than [the deponent's] life," and an entity "has a life beyond that of mortals." Id. As the district court in DHL Express (USA), Inc. v. Express Save Industries Inc., 2009 WL 3418148, at *1 n.4 (S.D. Fl. Oct. 19, 2009), explained:

> A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity. Moreover, if the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.

Id. Thus, the depositions of the inventors, its in-house counsel, and others in their individual capacities does not excuse Desotech from designating and producing a knowledgeable corporative representative for deposition on 3D Systems' topics as required by Rule 30(b)(6).

Desotech's assertion that Ms. Gashkoff would be best able to provide information about legal matters without implicating any privilege does not change anything. Ms. Gashkoff (and the other individuals mentioned by Desotech) were never designated as a 30(b)(6) deponent and did not provide testimony representing the knowledge of Desotech. Although Desotech says that as its counsel, Ms. Gashkoff is the most knowledgeable person to speak on legal topics, it does not indicate that Ms. Gashkoff's testimony would represent all of the knowledge Desotech has on the subjects. 3D Systems is entitled to depose a representative of Desotech who possesses the corporate entity's knowledge of legal and other matters. However, to the extent that Desotech's knowledge is the same as Ms. Gashkoff's and other witnesses' on certain topics, the Court agrees with

Desotech that further testimony on such topics would be unnecessarily duplicative at this time. 3D Systems is entitled to a stipulation that the individual deposition testimony at issue binds Desotech in the same manner as the deposition testimony of a 30(b)(6) witness.

## E.       Sanctions

Both sides move for sanctions. 3D Systems seeks reimbursement for its fees and expenses associated with its motion. 3D Systems argues that Desotech's unpreparedness will  cause 3D Systems to take one or more further Rule 30(b)(6) depositions and forced 3D Systems to incur the expenses associated with the present motion.  Desotech contends that 3D Systems' motion was unwarranted because Mr. Southwell testified consistently with Rule 30(b)(6) and Desotech's Objections and the parties' correspondence prior to the deposition.  Desotech further asserts that the motion was premature because many other witnesses have provided or may be able to provide testimony on the subject matter of the topics.  For these reasons, Desotech seeks its fees and costs in responding to 3D Systems' motion.

The requests for fees and costs are denied.  Mr. Southwell did provide knowledgeable and complete testimony regarding some of the topics.  Moreover, there was room for reasonable disagreement about the issues raised by Desotech, and there is no evidence of bad faith or willful obstruction here.

## III.       Conclusion

For these reasons, 3D Systems' motion to compel is granted in part and denied in part.  As necessary and consistent with this Order, Desotech shall reproduce Mr. Southwell and/or designate additional witnesses to provide any missing information.